JS 44 - No. CALIF. (Rev. 4/97)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO)

## I.(a) PLAINTIFFS

JAMES G. BUSSING, Derivatively on Behalf of
ASYST TECHNOLOGIES, INC.

**DEFENDANTS**

STEPHEN S. SCHWARTZ, ROBERT J. NIKL
(SEE ATTACHMENT A)

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

Essex County, Massachusetts

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Shawn A. Williams, Esq.          415/288-4545
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine St., Ste. 2600, San Francisco, CA 94111

ATTORNEYS (IF KNOWN)

C 06 4669



## II. BASIS OF JURISDICTION (PLACE AN "×" IN ONE BOX ONLY)

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 4  Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "×" IN ONE BOX FOR PLAINTIFF
(For diversity cases only)                          AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN  (PLACE AN "×" IN ONE BOX ONLY)

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to
District Judge from
Magistrate Judgment

## V. NATURE OF SUIT  (PLACE AN "×" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☑ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| | | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl.Ret. Inc. Security Act | ☐ 870 Taxes (US Plaintiff or Defendant | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence Habeas Corpus: | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | | ☐ 890 Other Statutory Actions |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 535 Death Penalty | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

For Violations of §§10(B), 14(a) and 20(a) of the Securities Exchange Act of 1934 and State Law Claims

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

☐ CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE A "×" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND   ☑ SAN JOSE

DATE August 1, 2006          SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse    (Rev. 12/96)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a). F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an " • " in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an " • " in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.  Residence** (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Origin.** Place an " • " in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**V.   Nature of Suit.** Place an " • " in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII. Requested in Complaint.** Class Action. Place an " • " in this box if you are filing a class action under Rule 23, F.R.Cv.P. Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Date and Attorney Signature.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## ATTACHMENT A

(Defendants cont.)

ANTHONY C. BONORA, STANLEY J. GRUBEL, TSUYOSHI KAWANISHI, ROBERT A. McNAMARA, ANTHONY E. SANTELLI, WILLIAM SIMON and WALTER W. WILSON,

Defendants,

– and –

ASYST TECHNOLOGIES INC., a California corporation,

Nominal Defendant.

ORIGINAL

1   LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2   SHAWN A. WILLIAMS (213113)
    100 Pine Street, Suite 2600
3   San Francisco, CA  94111
    Telephone: 415/288-4545
4   415/288-4534 (fax)
    shawnw@lerachlaw.com
5         – and –
    WILLIAM S. LERACH (68581)
6   DARREN J. ROBBINS (168593)
    TRAVIS E. DOWNS III (148274)
7   655 West Broadway, Suite 1900
    San Diego, CA  92101
8   Telephone: 619/231-1058
    619/231-7423 (fax)
9   billl@lerachlaw.com
    darrenr@lerachlaw.com
10  travisd@lerachlaw.com

11  Attorneys for Plaintiff

C 06        4669

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14  JAMES G. BUSSING, Derivatively on Behalf )   No.
    of ASYST TECHNOLOGIES, INC.,             )
15                                           )   VERIFIED SHAREHOLDER DERIVATIVE
                       Plaintiff,            )   COMPLAINT FOR VIOLATION OF THE
16                                           )   FEDERAL SECURITIES LAWS AND
         vs.                                 )   STATE LAW CLAIMS FOR BREACH OF
17                                           )   FIDUCIARY DUTY, ABUSE OF
    STEPHEN S. SCHWARTZ, ROBERT J.           )   CONTROL, CONSTRUCTIVE FRAUD,
18  NIKL, ANTHONY C. BONORA, STANLEY         )   CORPORATE WASTE, UNJUST
    J. GRUBEL, TSUYOSHI KAWANISHI,           )   ENRICHMENT, GROSS
19  ROBERT A. McNAMARA, ANTHONY E.           )   MISMANAGEMENT AND ACTION FOR
    SANTELLI, WILLIAM SIMON and              )   ACCOUNTING AND VIOLATIONS OF
20  WALTER W. WILSON,                        )   CALIFORNIA CORPORATIONS CODE
                                             )
21                     Defendants,           )
                                             )
22        – and –                            )
                                             )
23  ASYST TECHNOLOGIES, INC., a California   )
    corporation,                             )
24                                           )
                  Nominal Defendant.         )
25  _____ )   DEMAND FOR JURY TRIAL

26

27

28

1

### NATURE OF THE ACTION

2    1.    This is a shareholder derivative action brought by a shareholder of Asyst

3 Technologies, Inc. ("Asyst" or the "Company") on behalf of the Company against its Board of

4 Directors and certain of its senior executives (collectively, "Defendants"). This action seeks to

5 remedy Defendants' violations of federal and state law, including breaches of fiduciary duty,

6 abuse of control, constructive fraud, corporate waste, unjust enrichment and gross

7 mismanagement arising out of a scheme and wrongful course of business whereby Defendants

8 allowed senior Asyst insiders to divert hundreds of millions of dollars of corporate assets to

9 themselves via the manipulation of grant dates associated with hundreds of thousands of stock

10 options granted to Asyst insiders. Each of the Defendants also participated in the concealment of

11 the backdating option scheme complained of herein and/or refused to take advantage of the

12 Company's legal rights to require these senior insiders to disgorge the hundreds of millions in

13 illicitly obtained incentive compensation and proceeds diverted to them since 1995.

14    2.    Between 1995 and the present, Defendants also caused Asyst to file false and

15 misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy

16 Statements filed with the SEC which stated that the options granted by Asyst carried with them an

17 exercise price that was *not less than* the fair market value of Asyst stock on the date of grant and

18 issuance.

19    3.    In fact, Defendants were aware that the practices employed by the Board allowed

20 the stock option grants to be *backdated* to dates when the Company's shares were trading at or

21 near the lowest price for that relevant period. By May 2006, Defendants' backdating scheme had

22 yielded stock option grants to the Company's executive officers worth millions of dollars. These

23 grants were included in more than $12.3 million in stock sale proceeds for one of the Defendants.

24    4.    Defendants' misrepresentations and wrongful course of conduct violated the

25 Securities Exchange Act of 1934 (the "Exchange Act"), as well as California law. By authorizing

26 and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Asyst to issue

27 false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Asyst

28

1  executives; and (iii) subjected Asyst to potential liability from regulators including the SEC and
2  the IRS.

3      5.      Defendants' gross mismanagement and malfeasance over the past decade has
4  exposed Asyst and its senior executives to criminal and civil liability for issuing false and
5  misleading financial statements. Specifically, Defendants caused or allowed Asyst to issue
6  statements that failed to disclose or misstated the following: (i) that the Company had problems
7  with its internal controls that prevented it from issuing accurate financial reports and projections;
8  (ii) that because of improperly recorded stock-based compensation expenses, the Company's
9  financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the
10 Company's public disclosures presented an inflated view of Asyst's earnings and earnings per
11 share.

12     6.      Defendants' malfeasance and mismanagement during the relevant period has
13 wreaked hundreds of millions of dollars of damages on Asyst. The Company's senior executives
14 were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-
15 priced stock options and to issue false financial statements to cover up their misdeeds.
16 Defendants' breaches of fiduciary duties in the administration of the Company's stock option
17 plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to
18 the plans. The Company has now been mentioned as one of several companies likely to have
19 manipulated options. Meanwhile, one of the Defendants, who received under-priced stock options
20 and/or knew material non-public information regarding Asyst's internal control problems, abused
21 his fiduciary relationship with the Company by selling over $12.3 million worth of his personally
22 held shares at artificially inflated prices during the relevant period. This action seeks recovery for
23 Asyst against these faithless fiduciaries, as Asyst's Board of Directors, as currently composed, is
24 simply unable or unwilling to do so.

25                          **INTRADISTRICT ASSIGNMENT**

26     7.      A substantial part of the events or omissions which give rise to the claims in this
27 action occurred in the county of Alameda, and as such this action is properly assigned to the San
28 Francisco or Oakland divisions of this Court.

1

**JURISDICTION AND VENUE**

2          8.          The claims asserted herein arise under §§10(b), 14(a) and 20(a) of the Exchange

3   Act, 15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated

4   thereunder, and under California law for breach of fiduciary duty, abuse of control, constructive

5   fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts,

6   conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means

7   and instrumentalities of interstate commerce, the United States mail and the facilities of a national

8   securities market.

9          9.          This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15

10   U.S.C. §78aa, as well as 28 U.S.C. §§1331 and 1337. This Court also has supplemental

11   jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

12          10.          This action is not a collusive one to confer jurisdiction on a court of the United

13   States which it would not otherwise have.

14          11.          Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C.

15   §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation

16   and dissemination of materially false and misleading information, occurred in substantial part in

17   this District. Asyst is located in and conducts its business in this District. Further, Defendants

18   conduct business in this District, and certain of the Defendants are citizens of California and

19   reside in this District.

20

**PARTIES**

21          12.          Plaintiff James G. Bussing is a shareholder of Asyst, and holds and has continually

22   held 2,000 shares of Asyst stock since 2000.

23          13.          Nominal party Asyst is a California corporation with its principal executive offices

24   located at 46897 Bayside Parkway, Fremont, California.

25          14.          Defendant Stephen S. Schwartz ("Schwartz") has been Chairman of the Board of

26   Directors since January 2003 and Chief Executive Officer ("CEO"), President and a director of

27   Asyst since August 2002. Schwartz joined Asyst in January 2001 as Senior Vice President,

28   Product Groups and Operations and became Executive Vice President, Product Groups and

1   Operations in October 2001. Because of Schwartz's positions, he knew the adverse non-public
2   information about the business of Asyst, as well as its finances, markets and present and future
3   business prospects, via access to internal corporate documents, conversations and connections
4   with other corporate officers and employees, attendance at management and Board meetings and
5   committees thereof and via reports and other information provided to him in connection therewith.
6   During the relevant period, Schwartz participated in the issuance of false and/or misleading
7   statements, including the preparation of the false and/or misleading press releases and SEC filings.

8       15.    Defendant Robert J. Nikl ("Nikl") has been Senior Vice President and Chief
9   Financial Officer ("CFO") since joining Asyst in September 2004. Defendant Nikl, because of his
10  specialized financial expertise, was in a unique position to understand the business of Asyst, as
11  well as its finances, markets and present and future business prospects, via access to internal
12  corporate documents, conversations and connections with other corporate officers and employees,
13  attendance at management meetings and via reports and other information provided to him in
14  connection therewith. During the relevant period, Nikl participated in the issuance of false and/or
15  misleading statements, including the preparation of the false and/or misleading press releases and
16  SEC filings.

17      16.    Defendant Anthony C. Bonora ("Bonora") has been Executive Vice President,
18  Research and Development of Asyst since 1986 and Chief Technology Officer since April 2000.
19  Because of Bonora's positions, he knew the adverse non-public information about the business of
20  Asyst, as well as its finances, markets and present and future business prospects, via access to
21  internal corporate documents, conversations and connections with other corporate officers and
22  employees, attendance at Board meetings and committees thereof and via reports and other
23  information provided to him in connection therewith. During the relevant period, Bonora
24  participated in the issuance of false and/or misleading statements, including the preparation of the
25  false and/or misleading press releases and SEC filings. Based on his knowledge of material non-
26  public information regarding the Company, defendant Bonora violated Cal. Corp. Code §§25402
27  and 25502.5 by selling 743,461 shares of Asyst stock for proceeds of $12.3 million during the
28  relevant period.

1    17.    Defendant Stanley J. Grubel ("Grubel") has been a director of Asyst since January
2  1997. Because of Grubel's positions, he knew the adverse non-public information about the
3  business of Asyst, as well as its finances, markets and present and future business prospects, via
4  access to internal corporate documents, conversations and connections with other corporate
5  officers and employees, attendance at Board meetings and committees thereof and via reports and
6  other information provided to him in connection therewith. During the relevant period, Grubel
7  participated in the issuance of false and/or misleading statements, including the preparation of the
8  false and/or misleading press releases and SEC filings. As a member of the Audit, Compensation
9  and Governance and Nominating Committees, defendant Grubel caused or allowed the
10  dissemination of the improper public statements and controlled the other Defendants' stock option
11  awards described herein.

12    18.    Defendant Tsuyoshi Kawanishi ("Kawanishi") has been a director of Asyst since
13  June 2003. Because of Kawanishi's position, he knew the adverse non-public information about
14  the business of Asyst, as well as its finances, markets and present and future business prospects,
15  via access to internal corporate documents, conversations and connections with other corporate
16  officers and employees, attendance at Board meetings and committees thereof and via reports and
17  other information provided to him in connection therewith. During the relevant period, Kawaniski
18  participated in the issuance of false and/or misleading statements, including the preparation of the
19  false and/or misleading press releases and SEC filings.

20    19.    Defendant Robert A. McNamara ("McNamara") has been a director of Asyst since
21  October 1999. Because of McNamara's position, he knew the adverse non-public information
22  about the business of Asyst, as well as its finances, markets and present and future business
23  prospects, via access to internal corporate documents, conversations and connections with other
24  corporate officers and employees, attendance at Board meetings and committees thereof and via
25  reports and other information provided to him in connection therewith. As a member of the Audit
26  Committee, defendant McNamara caused or allowed the dissemination of the improper public
27  statements described herein. During the relevant period, McNamara participated in the issuance
28

1  of false and/or misleading statements, including the preparation of the false and/or misleading
2  press releases and SEC filings.

3       20.     Defendant Anthony E. Santelli ("Santelli") has been a director of Asyst since May
4  2001. Because of Santelli's position, he knew the adverse non-public information about the
5  business of Asyst, as well as its finances, markets and present and future business prospects, via
6  access to internal corporate documents, conversations and connections with other corporate
7  officers and employees, attendance at Board meetings and committees thereof and via reports and
8  other information provided to him in connection therewith. During the relevant period, Santelli
9  participated in the issuance of false and/or misleading statements, including the preparation of the
10  false and/or misleading press releases and SEC filings. As a member of the Compensation
11  Committee, defendant Santelli controlled the other Defendants' stock option awards described
12  herein.

13       21.     Defendant William Simon ("Simon") has been a director of Asyst since January
14  2005. In October 2005, defendant Simon was appointed Chair of the Audit Committee.

15       22.     Defendant Walter W. Wilson ("Wilson") has been a director of Asyst since January
16  1995. Because of Wilson's position, he knew the adverse non-public information about the
17  business of Asyst, as well as its finances, markets and present and future business prospects, via
18  access to internal corporate documents, conversations and connections with other corporate
19  officers and employees, attendance at Board meetings and committees thereof and via reports and
20  other information provided to him in connection therewith. During the relevant period, Wilson
21  participated in the issuance of false and/or misleading statements, including the preparation of the
22  false and/or misleading press releases and SEC filings. As a member of the Audit Committee,
23  defendant Wilson  caused or allowed the dissemination of the improper public statements
24  described herein.

25       23.     The defendants identified in ¶¶14 and 17-22 are referred to herein as the "Director
26  Defendants."   The defendants identified in ¶¶14-16 are referred to herein as the "Officer
27  Defendants."   The defendant identified in ¶16 is referred to herein as the "Insider Selling
28  Defendant."

**DEFENDANTS' DUTIES**

24. Each officer and director of Asyst named herein owed the Company and Asyst shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Asyst's directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as officers and directors of Asyst. Further, the misconduct of Asyst's officers has been ratified by Asyst's Board, which has failed to take any legal action on behalf of the Company against them.

25. By reason of their positions as officers, directors and fiduciaries of Asyst and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Asyst and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Asyst in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Asyst and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Asyst to divert assets to themselves via improper and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

26. Because of their positions of control and authority as directors or officers of Asyst, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Asyst to disseminate false Proxy Statements for 1996-2005, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received. Because of their positions with Asyst, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Asyst shareholders and the financial markets but failed to do so.

1    27.    Between 1996 and 2005, Defendants repeated in each Proxy Statement that the
2 stock option grants made during that period carried an exercise price that was not less than the fair
3 market value of Asyst stock on the date granted, as calculated by the public trading price of the
4 stock at the market's close on that date. However, Defendants concealed until May 2006 that the
5 stock option grants were repeatedly and consciously backdated to ensure that the strike price
6 associated with the option grants was at or near the lowest trading price for that fiscal period.[1]
7 Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans,
8 plaintiff seeks to have the directors' and officers' plans voided and gains from those plans
9 returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options
10 granted to defendants between 1997 and 2002 cancelled, the financial gains obtained via the
11 exercise of such options returned to the Company and to have Defendants revise the Company's
12 financial statements to reflect the truth concerning these option grants.

13    28.    To discharge their duties, the directors of Asyst were required to exercise
14 reasonable and prudent supervision over the management, policies, practices and controls of the
15 business and financial affairs of Asyst. By virtue of such duties, the officers and directors of
16 Asyst were required, among other things, to:

17    (a)    manage, conduct, supervise and direct the business affairs of Asyst in
18 accordance with all applicable law (including federal and state laws, government rules and
19 regulations and the charter and bylaws of Asyst);

20    (b)    neither engage in self-dealing nor knowingly permit any officer, director or
21 employee of Asyst to engage in self-dealing;

22    (c)    neither violate nor knowingly permit any officer, director or employee of
23 Asyst to violate applicable laws, rules and regulations;

24    (d)    remain informed as to the status of Asyst's operations, including its
25 practices in relation to the cost of allowing the pervasive backdating and improperly accounting

26 _____

27 [1]    Asyst's fiscal year ends on March 31.

28

1 | for such, and upon receipt of notice or information of imprudent or unsound practices, to make a
2 | reasonable inquiry in connection therewith, and to take steps to correct such conditions or
3 | practices and make such disclosures as are necessary to comply with the U.S. federal securities
4 | laws and their duty of candor to the Company's shareholders;

5 |         (e)     prudently protect the Company's assets, including taking all necessary steps
6 | to recover corporate assets (cash, stock options) improperly paid to Company executives and
7 | directors together with the related costs (professional fees) proximately caused by the illegal
8 | conduct described herein;

9 |         (f)     establish and maintain systematic and accurate records and reports of the
10 | business and affairs of Asyst and procedures for the reporting of the business and affairs to the
11 | Board of Directors and to periodically investigate, or cause independent investigation to be made
12 | of, said reports and records;

13 |         (g)     maintain and implement an adequate, functioning system of internal legal,
14 | financial and accounting controls, such that Asyst's financial statements – including its expenses,
15 | accounting for stock option grants and other financial information – would be accurate and the
16 | actions of its directors would be in accordance with all applicable laws;

17 |         (h)     exercise control and supervision over the public statements to the securities
18 | markets and trading in Asyst stock by the officers and employees of Asyst; and

19 |         (i)     supervise the preparation and filing of any financial reports or other
20 | information required by law from Asyst and to examine and evaluate any reports of examinations,
21 | audits or other financial information concerning the financial affairs of Asyst and to make full and
22 | accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set
23 | forth above.

24 |     29.     Each Defendant, by virtue of his position as a director and/or officer, owed to the
25 | Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due
26 | care and diligence in the management and administration of the affairs of the Company, as well as
27 | in the use and preservation of its property and assets. The conduct of the Defendants complained
28 | of herein involves a knowing and culpable violation of their obligations as directors and/or

1  officers of Asyst, the absence of good faith on their part, and a reckless disregard for their duties
2  to the Company and its shareholders which Defendants were aware or should have been aware
3  posed a risk of serious injury to the Company. The conduct of the Defendants who were also
4  officers and/or directors of the Company during the relevant period has been ratified by the
5  Director Defendants who comprised Asyst's entire Board during the relevant period.

6       30.    Defendants breached their duties of loyalty and good faith by allowing or by
7  themselves causing the Company to misrepresent its financial results and prospects, as detailed
8  herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. In
9  addition, as a result of Defendants' illegal actions and course of conduct during the relevant
10  period, the Company is now the subject of an SEC investigation. As a result, Asyst has expended
11  and will continue to expend significant sums of money. Such expenditures include, but are not
12  limited to:

13             (a)    improvidently paid executive compensation;

14             (b)    increased capital costs as a result of the loss of market capitalization and the
15  Company's damaged reputation in the investment community;

16             (c)    costs incurred to carry out internal investigations, including legal fees paid
17  to outside counsel; and

18             (d)    incurring possible IRS penalties for improperly reporting compensation.

19       31.    These actions have irreparably damaged Asyst's corporate image and goodwill.
20  For at least the foreseeable future, Asyst will suffer from what is known as the "liar's discount," a
21  term applied to the stocks of companies who have been implicated in illegal behavior and have
22  misled the investing public, such that Asyst's ability to raise equity capital or debt on favorable
23  terms in the future is now impaired.

24  **AIDING AND ABETTING AND CONCERTED ACTION**

25       32.    In committing the wrongful acts alleged herein, Defendants have pursued or joined
26  in the pursuit of a common course of conduct and acted in concert with one another in furtherance
27  of their common plan.

28

1       33.     During all times relevant hereto, Defendants collectively and individually initiated

2 a course of conduct which was designed to and did: (i) conceal the fact that the Company was

3 allowing its directors and senior officers to divert hundreds of millions of dollars to Asyst insiders

4 and directors and causing Asyst to misrepresent its financial results; (ii) maintain Defendants'

5 executive and directorial positions at Asyst and the profits, power and prestige which Defendants

6 enjoyed as a result of these positions; (iii) deceive the investing public, including shareholders of

7 Asyst, regarding Defendants' compensation practices and Asyst's financial performance.

8       34.     The purpose and effect of Defendants' common course of conduct was, among

9 other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of

10 control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse

11 information concerning the Company's operation and financial condition and to artificially inflate

12 the price of Asyst common stock so they could dispose of millions of dollars of their own Asyst

13 stock, and enhance their executive and directorial positions and receive the substantial

14 compensation they obtained as a result thereof.

15       35.     Defendants accomplished their common enterprise and/or common course of

16 conduct by causing the Company to purposefully and/or recklessly engage in the option

17 backdating scheme alleged herein and misrepresent Asyst's financial results. Each of the

18 Defendants was a direct, necessary, and substantial participant in the common enterprise and/or

19 common course of conduct complained of herein.

20       36.     Each of the Defendants aided and abetted and rendered substantial assistance in

21 the wrongs complained of herein. In taking such actions to substantially assist the commission of

22 the wrongdoing complained of herein, each Defendant acted with knowledge of the primary

23 wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his

24 overall contribution to and furtherance of the wrongdoing.

25                                            **BACKGROUND**

26       37.     Asyst develops, manufactures, and markets systems utilizing isolation technology,

27 material tracking products, and factory automation solutions. The Company's systems reduce

28

1  contamination on in-process wafers by isolating processing equipment and wafers in ultraclean
2  mini-environments within a cleanroom production facility.

3       38.     Throughout the relevant period, Defendants caused Asyst to grant them millions of
4  stock options permitting them to buy Asyst stock for pennies on the dollar which they could in
5  turn sell as the Company's stock price increased. A stock option gives the holder the right to buy
6  a stock at a certain price in the future. Typically, companies set that price at the same time their
7  directors approve an option grant, with an exercise price – also known as the "strike price" –
8  usually set at the closing price of the stock that day, the closing price of the night before or by
9  computing an average of the high and low prices on the day of the vote.

10      39.     However, many of the millions of options granted to Asyst's executives had a
11 hidden, valuable component: they were misdated, often making them even more significantly
12 valuable. The misdated stock option grants fell largely into three categories: (i) "look back"
13 grants, in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick
14 a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was
15 finalized – and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant
16 on January 15, but there is a period after January 15 in which the grantor waits to see if a more
17 advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where
18 there was a failure to complete the option grant process by the date of the grant (*e.g.,* where there
19 is a decision to issue a grant as of a certain date, but after that date there are changes in the
20 grantees or amounts to grantees, and although the work is not complete on those grants as of the
21 stated grant date, that date is nonetheless used).

22                              **STOCK OPTION GRANTS**

23      40.     Certain of Asyst's manipulative stock option grants are described below:

24 **1995 Option Grants**

25      41.     Defendants dated Asyst's 1995 option grants as of August 8, 1995 at $41.50 per
26 share (not adjusted for stock splits) – the low of the month. Defendant Bonora and former officers
27 Mihir Parikh ("Parikh") and Bruce Rhine received 15,000, 50,000 and 10,000 options,
28 respectively, at this exercise price.

**1998 Option Grants**

42.    Defendants dated most of Asyst's 1998 option grants as of October 19, 1998 at $6.875 per share (not adjusted for stock split), immediately prior to a large increase in the Company's stock price. Indeed, within days the stock would increase to above $12.00 per share. Defendant Bonora and former officers Parikh, Terry Moshier and Douglas McCutcheon received 125,000, 100,000, 150,000 and 75,000 options, respectively, at this exercise price.

43.    Below are several of Asyst's grants which occurred right before significant stock price increases (not adjusted for stock splits):



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12



**Asyst Technologies, Inc.**
March 11, 2002 - May 10, 2002

13    44.    Complicating matters and magnifying the harm to Asyst, during the relevant
14  period, Asyst's internal controls and accounting controls with respect to option grants and
15  exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of
16  both grants and exercises to be manipulated and the Company's executive compensation expenses
17  to be materially understated. They also allowed grant dates to be changed to provide executives
18  with more favorably priced options, in effect augmenting their compensation, with no benefit
19  running to the Company.

20    45.    Specifically, in many instances the reported dates Asyst stock options were granted
21  differed from the dates on which the options appear to have been actually granted. The practice
22  applied to the overwhelming majority of stock option grants made during the relevant period,
23  which allowed executives and employees to make more money on their options because it set a
24  lower "strike price" at which the options could be exercised, allowing employees to take larger
25  profits when the stock price later rose. In almost every case of misdating, the price of Asyst
26  shares on the reported option-grant date was lower than the share price on the actual day the
27  options were issued.

28

1    46.    Through their fiduciary duties of care, good faith and loyalty, Defendants owed to
2  Asyst a duty to ensure that the Company's financial reporting fairly presented, in all material
3  respects, the operations and financial condition of the Company. In order to adequately carry out
4  these duties, it is necessary for the Defendants to know and understand the material non-public
5  information to be either disclosed or omitted from the Company's public statements. This
6  material non-public information included the problems Asyst faced because of its deficient
7  internal controls. Furthermore, defendants Grubel, McNamara and Simon, as members of the
8  Audit Committee during the relevant period, had a special duty to know and understand this
9  material information as set out in the Audit Committee's charter, which provides that the Audit
10  Committee is responsible for reviewing, in conjunction with management, the Company's policies
11  generally with respect to the Company's earnings press releases and with respect to financial
12  information and earnings guidance provided to analysts and rating agencies. Defendants
13  Schwartz, Bonora and Nikl, as officers of Asyst, had ample opportunity to discuss this material
14  information with their fellow officers at management meetings and via internal corporate
15  documents and reports. Moreover, defendants Schwartz, Grubel, Kawanishi, McNamara, Santelli,
16  Simon and Wilson, as directors of Asyst, had ample opportunity to discuss this material
17  information with fellow directors at any of the scores of Board meetings that occurred during the
18  relevant period as well as at committee meetings of the Board. Despite these duties, Defendants
19  negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the
20  misleading statements to be disseminated by Asyst to the investing public and the Company's
21  shareholders during the relevant period.

22    47.    Specifically, since at least 1996, Defendants have caused Asyst to report false and
23  misleading fiscal and quarterly financial results which materially understated its compensation
24  expenses and thus overstated its earnings as follows:

| FISCAL YEAR | REPORTED EARNINGS (LOSS) (in millions) | REPORTED BASIC EARNINGS (LOSS) PER SHARE |
|---|---|---|
| 1996 | $5.24 | $0.36 |
| 1997 | $17.91* | $0.87 |
| 1998 | $16.40 | $0.76 |
| 1999 | $(26.93) | $(0.80) |

1

| 2000 | $10.02 | $0.53 |
| 2001 | $27.03 | $0.87 |
| 2002 | $(148.92) | $(1.55) |
| 2003 | $(135.87) | $(2.43) |
| 2004 | $(83.45) | $(1.20) |
| 2005 | $(135.87) | $0.20* |

2

3

4

* Income from continuing operations

5

6       48.     Meanwhile, Defendants were causing the Company to grant them millions of stock

7    options, many of which were misdated. In fact, non-employee members of the Asyst Board of

8    Directors received most of their compensation for serving as Board members in the form of stock

9    options. The Company's executive directors and officers also received a significant number of

10   stock options as compensation during the relevant period. In total, during the relevant period

11   Defendants caused the Company to grant them millions of stock options, many of which, the

     evidence will show, were misdated.

12      49.     Moreover, throughout the relevant period defendant Bonora exercised many of

13   these stock options contributing to his ability to sell 743,461 Asyst shares for proceeds of over

14   $12.3 million between January 1997 and April 2006 – shares he obtained often by cashing in

15   under-priced stock options:

16      50.     Then, on May 16, 2006, Merrill Lynch issued an analyst report in which it

17   questioned Asyst's option granting practices for the period 1996-2002.

18      51.     In effect, during the relevant period, the Defendants caused Asyst's shares to trade

19   at artificially inflated levels by issuing a series of materially false and misleading statements

20   regarding the Company's financial statements, business and prospects. Specifically, Defendants

21   caused or allowed Asyst to issue statements that failed to disclose or misstated the following: (i)

22   that the Company had problems with its internal controls that prevented it from issuing accurate

23   financial reports and projections; (ii) that because of improperly recorded stock-based

24   compensation expenses the Company's financial results violated GAAP; and (iii) that the

25   Company's public disclosures presented an inflated view of Asyst's earnings and restated

26   earnings.

27

28

1

**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

2    52.    Plaintiff brings this action derivatively in the right and for the benefit of Asyst to
3    redress injuries suffered and to be suffered by Asyst as a direct result of Defendants' violations of
4    state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross
5    mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting
6    thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court
7    which it would not otherwise have.

8    53.    Plaintiff will adequately and fairly represent the interests of Asyst and its
9    shareholders in enforcing and prosecuting its rights.

10   54.    Plaintiff is an owner of Asyst stock and was an owner of Asyst stock during times
11   relevant to Defendants' illegal and wrongful course of conduct alleged herein.

12   55.    Based upon the facts set forth throughout this Complaint, applicable law and the
13   longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon
14   the Asyst Board of Directors to institute this action against the officers and members of the Asyst
15   Board of Directors is excused as futile. A pre-filing demand would be a useless and futile act
16   because:

17   (a)    The members of Asyst's Board have demonstrated their unwillingness
18   and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves
19   and/or their fellow directors and allies in the top ranks of the corporation for the violations of law
20   complained of herein. These are people they have developed professional relationships with, who
21   are their friends and with whom they have entangling financial alliances, interests and
22   dependencies, and therefore, they are not able to and will not vigorously prosecute any such
23   action.

24   (b)    The Asyst Board of Directors and senior management participated in,
25   approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts
26   to conceal or disguise those wrongs from Asyst's stockholders or recklessly and/or negligently
27   disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a
28   result of their access to and review of internal corporate documents, or conversations and

1   connections with other corporate officers, employees, and directors and attendance at management

2   and/or Board meetings, each of the Defendants knew the adverse non-public information

3   regarding the improper stock option grants and financial reporting. Pursuant to their specific

4   duties as Board members, the Director Defendants are charged with the management of the

5   Company and to conduct its business affairs. Defendants breached the fiduciary duties that they

6   owed to Asyst and its shareholders in that they failed to prevent and correct the improper stock

7   option granting and financial reporting. Certain directors are also dominated and controlled by

8   other directors and cannot act independently of them. Thus, the Asyst Board cannot exercise

9   independent objective judgment in deciding whether to bring this action or whether to vigorously

10  prosecute this action because each of its members participated personally in the wrongdoing or are

11  dependent upon other Defendants who did.

12          (c)     The acts complained of constitute violations of the fiduciary duties owed by

13  Asyst's officers and directors and these acts are incapable of ratification.

14          (d)     The members of Asyst's Board have benefited, and will continue to benefit,

15  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions

16  of control and the perquisites derived thereof, and are incapable of exercising independent

17  objective judgment in deciding whether to bring this action.

18          (e)     Any suit by the current directors of Asyst to remedy these wrongs would

19  likely further expose the liability of Defendants under the federal securities laws, which could

20  result in additional civil and/or criminal actions being filed against one or more of the Defendants,

21  thus, they are hopelessly conflicted in making any supposedly independent determination whether

22  to sue themselves.

23          (f)     Asyst has been and will continue to be exposed to significant losses due to

24  the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against

25  itself or others who were responsible for that wrongful conduct to attempt to recover for Asyst any

26  part of the damages Asyst suffered and will suffer thereby.

27          (g)     In order to properly prosecute this lawsuit, it would be necessary for the

28  directors to sue themselves and the other Defendants, requiring them to expose themselves and

1 || their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS
2 || penalties. This they will not do.

3           (h)     Asyst's current and past officers and directors are protected against
4 || personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in
5 || this Complaint by directors' and officers' liability insurance which they caused the Company to
6 || purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of
7 || Asyst. However, due to certain changes in the language of directors' and officers' liability
8 || insurance policies in the past few years, the directors' and officers' liability insurance policies
9 || covering the Defendants in this case contain provisions which eliminate coverage for any action
10 || brought directly by Asyst against these Defendants, known as, *inter alia,* the "insured versus
11 || insured exclusion." As a result, if these directors were to sue themselves or certain of the officers
12 || of Asyst, there would be no directors' and officers' insurance protection and thus, this is a further
13 || reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively,
14 || as this action is brought, such insurance coverage exists and will provide a basis for the Company
15 || to effectuate a recovery.

16           (i)     In order to bring this action for breaching their fiduciary duties, the
17 || members of the Asyst Board would have been required to sue themselves and/or their fellow
18 || directors and allies in the top ranks of the Company, who are their personal friends and with
19 || whom they have entangling financial alliances, interests and dependencies, which they would not
20 || do.

21     56.     Plaintiff has not made any demand on shareholders of Asyst to institute this action
22 || since such demand would be a futile and useless act for the following reasons:

23           (a)     Asyst is a publicly traded company with approximately 48 million shares
24 || outstanding, and thousands of shareholders;

25           (b)     Making demand on such a number of shareholders would be impossible for
26 || plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders;
27 || and

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS      - 21 -

1              (c)      Making demand on all shareholders would force plaintiff to incur huge

2 expenses, assuming all shareholders could be individually identified.

3                      **THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT**
                                **ON ASYST'S FINANCIAL STATEMENTS**

4

5 **The Fiscal 1996 Form 10-K**

6          57.     On or about July 1, 1996, the Company filed its fiscal 1996 Form 10-K with the

7 SEC. The fiscal 1996 Form 10-K was simultaneously distributed to shareholders and the public.

8 The fiscal 1996 Form 10-K included Asyst's fiscal 1996 financial statements which were

9 materially false and misleading and presented in violation of GAAP, due to its improper

10 accounting for the backdated stock options. As a result, Asyst's compensation expense was

11 understated and its net earnings were overstated.

12 **The Fiscal 1997 Form 10-K**

13          58.     On or about June 24, 1997, the Company filed its fiscal 1997 Form 10-K with the

14 SEC. The fiscal 1997 Form 10-K was simultaneously distributed to shareholders and the public.

15 The fiscal 1997 Form 10-K included Asyst's fiscal 1997 financial statements which were

16 materially false and misleading and presented in violation of GAAP, due to its improper

17 accounting for the backdated stock options. As a result, Asyst's compensation expense was

18 understated and its net earnings were overstated.

19 **The Fiscal 1998 Form 10-K**

20          59.     On or about June 29, 1998, the Company filed its fiscal 1998 Form 10-K with the

21 SEC. The fiscal 1998 Form 10-K was simultaneously distributed to shareholders and the public.

22 The fiscal 1998 Form 10-K included Asyst's fiscal 1998 financial statements which were

23 materially false and misleading and presented in violation of GAAP, due to its improper

24 accounting for the backdated stock options. As a result, Asyst's compensation expense was

25 understated and its net earnings were overstated.

26 **The Fiscal 1999 Form 10-K**

27          60.     On or about June 29, 1999, the Company filed its fiscal 1999 Form 10-K with the

28 SEC. The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public.

1   The fiscal 1999 Form 10-K included Asyst's fiscal 1999 financial statements which were
2   materially false and misleading and presented in violation of GAAP, due to its improper
3   accounting for the backdated stock options. As a result, Asyst's compensation expense was
4   understated and its net earnings were overstated.

5   **The Fiscal 2000 Form 10-K**

6       61.     On or about June 29, 2000, the Company filed its fiscal 2000 Form 10-K with the
7   SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public.
8   The fiscal 2000 Form 10-K included Asyst's fiscal 2000 financial statements which were
9   materially false and misleading and presented in violation of GAAP, due to its improper
10  accounting for the backdated stock options. As a result, Asyst's compensation expense was
11  understated and its net earnings were overstated.

12  **The Fiscal 2001 Form 10-K**

13      62.     On or about June 19, 2001, the Company filed its fiscal 2001 Form 10-K with the
14  SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public.
15  The fiscal 2001 Form 10-K included Asyst's fiscal 2001 financial statements which were
16  materially false and misleading and presented in violation of GAAP, due to its improper
17  accounting for the backdated stock options. As a result, Asyst's compensation expense was
18  understated and its net earnings were overstated.

19  **The Fiscal 2002 Form 10-K**

20      63.     On or about June 28, 2002, the Company filed its fiscal 2002 Form 10-K with the
21  SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public.
22  The fiscal 2002 Form 10-K included Asyst's fiscal 2002 financial statements which were
23  materially false and misleading and presented in violation of GAAP, due to its improper
24  accounting for the backdated stock options. As a result, Asyst's compensation expense was
25  understated and its net earnings were overstated.

26  **The Fiscal 2003 Form 10-K**

27      64.     On or about June 30, 2003, the Company filed its fiscal 2003 Form 10-K with the
28  SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.

1  The fiscal 2003 Form 10-K included Asyst's fiscal 2003 financial statements which were
2  materially false and misleading and presented in violation of GAAP, due to its improper
3  accounting for the backdated stock options. As a result, Asyst's compensation expense was
4  understated and its net earnings were overstated.

5  **The Fiscal 2004 Form 10-K**

6        65.      On or about June 10, 2004, the Company filed its fiscal 2004 Form 10-K with the
7  SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.
8  The fiscal 2004 Form 10-K included Asyst's fiscal 2004 financial statements which were
9  materially false and misleading and presented in violation of GAAP, due to its improper
10  accounting for the backdated stock options. As a result, Asyst's compensation expense was
11  understated and its net earnings were overstated.

12  **The Fiscal 2005 Form 10-K**

13        66.      On or about June 29, 2005, the Company filed its fiscal 2005 Form 10-K with the
14  SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.
15  The fiscal 2005 Form 10-K included Asyst's fiscal 2005 financial statements which were
16  materially false and misleading and presented in violation of GAAP, due to its improper
17  accounting for the backdated stock options. As a result, Asyst's compensation expense was
18  understated and its net earnings were overstated.

19        67.      The materially false and misleading fiscal 1996-2005 Form 10-Ks described above
20  were reviewed, prepared and/or endorsed by the Director Defendants.

21                    **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

22        68.      The 1996-2005 Proxy Statements concealed Defendants' option backdating
23  scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when
24  voting on proxy proposals between 1996 and 2005. Defendants have been unjustly enriched at the
25  expense of Asyst, which has received and will receive less money from the Defendants when they
26  exercise their options at prices substantially lower than they would have if the options had not
27  been backdated.

28

1       69.    In fact, on May 16, 2006, Asyst's stock dropped as a result of Merrill Lynch
2   issuing an analyst report in which it questioned Asyst's option granting practices. Later the SEC
3   began an investigation and the Company announced it would be late filing its annual results due to
4   stock option issues.

5       70.    Each dollar diverted to Defendants via the option backdating scheme has come at
6   the expense of the Company. For example, if Bonora's 125,000 options granted on October 19,
7   1998 had not been manipulated, but rather had a strike price of $12.00, which it reached shortly
8   after the grant, instead of the $6.875 strike price, which was the trading low for the month, when
9   Bonora exercised those options the Company would receive $1.5 million instead of $859,000 – *a*
10  *cost to the Company of $641,000 for this single instance of option backdating*.

11                **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

12      71.    Unlike most companies which avoid such option backdating abuse by issuing stock
13  option grants at the same time each year, which eliminates the potential for backdating,
14  Defendants ensured that executives would not have any such restrictions. Given the many times
15  Asyst's grants were the low of the month in which options were granted, the date of their stock
16  option grants was clearly more than merely coincidental.

17      72.    As a result of the backdating of options, Defendants have been unjustly enriched at
18  the expense of Asyst, which has received and will receive less money from Defendants when they
19  exercise their options at prices substantially lower than they would have if the options had not
20  been backdated.

21                **TOLLING OF THE STATUTE OF LIMITATIONS**

22      73.    The Counts alleged herein are timely. As an initial matter, Defendants wrongfully
23  concealed their manipulation of the stock option plans, through strategic timing and fraudulent
24  backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Asyst's
25  public investors that Asyst's option grants were being administered by a committee of
26  independent directors, and by failing to disclose that backdated options were, in fact, actually
27  issued on dates other than those disclosed, and that strategically timed option grants were issued
28

1    based on the manipulation of insider information that ensured that the true fair market value of the

2    Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

3        74.    Asyst's public investors had no reason to know of the Defendants' breaches of

4    their fiduciary duties until May 2006, when Merrill Lynch issued its report detailing the option

5    practices of Asyst.

6        75.    Finally, as fiduciaries of Asyst and its public shareholders, the Defendants cannot

7    rely on any limitations defense where they withheld from Asyst's public shareholders the facts

8    that give rise to the claims asserted herein, *i.e.,* that the Asyst Board had abdicated its fiduciary

9    responsibilities to oversee the Company's executive compensation practices, and that the option

10   grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly,

11   to maximize the costs for the Company.

12                                        **COUNT I**

13                  **Violations of §10(b) and Rule 10b-5 of the Exchange Act**
                                  **Against All Defendants**

14

15       76.    Plaintiff incorporates by reference and realleges each and every allegation set forth

     above, as though fully set forth herein.

16

17       77.    Throughout the relevant period, Defendants individually and in concert, directly

18   and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the

19   mails, engaged and participated in a continuous course of conduct which allowed certain of the

     Company's officers and directors, including some of the Defendants, to receive improper option

20   grants and make no recompense to the Company.

21

22       78.    Defendants employed devices, schemes and artifices to defraud while in possession

23   of material, adverse non-public information and engaged in acts, practices and a course of conduct

24   that included the making of, or participation in the making of, untrue and/or misleading statements

25   of material facts and/or omitting to state material facts necessary in order to make the statements

     made about Asyst not misleading.

26

27       79.    Defendants, as top executive officers and directors of the Company, are liable as

28   direct participants in the wrongs complained of herein.  Through their positions of control and

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 26 -

1   authority as officers of the Company, each of the Defendants was able to and did control the

2   conduct complained of herein and the content of the public statements disseminated by Asyst.

3       80.     Defendants acted with scienter throughout the relevant period, in that they either

4   had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein,

5   or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true

6   facts, even though such facts were available to them.   Defendants were among the senior

7   management of the Company, and were therefore directly responsible for the false and misleading

8   statements and/or omissions disseminated to the public through press releases, news reports and

9   filings with the SEC.

10      81.     Each of the Defendants participated in a scheme to defraud with the purpose and

11  effect of defrauding Asyst.

12      82.     By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act,

13  and Rule 10b-5 promulgated thereunder.

14                                  **COUNT II**

15                  **Violations of §14(a) of the Exchange Act Against**
                                  **All Defendants**

16      83.     Plaintiff incorporates by reference and realleges each and every allegation set forth

17  above, as though fully set forth herein.

18      84.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no

19  proxy statement shall contain "any statement which, at the time and in the light of the

20  circumstances under which it is made, is false or misleading with respect to any material fact, or

21  which omits to state any material fact necessary in order to make the statements therein not false

22  or misleading."   17 C.F.R. §240.14a-9.

23      85.     The 1996-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they

24  omitted material facts, including the fact that certain of the Defendants were causing Asyst to

25  engage in an option backdating scheme, a fact which Defendants were aware of and participated

26  in from at least 1995.

27

28

1    86.    In the exercise of reasonable care, Defendants should have known that the Proxy
2  Statements were materially false and misleading.

3    87.    The misrepresentations and omissions in the Proxy Statements were material to
4  plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the
5  accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as
6  revelations of the truth would have immediately thwarted a continuation of shareholders'
7  endorsement of the directors' positions, the executive officers' compensation and the Company's
8  compensation policies.

9    88.    The Company was damaged as a result of the material misrepresentations and
10  omissions in the Proxy Statements.

11                                    **COUNT III**

12              **Violations of §20(a) of the Exchange Act Against
                            All Defendants**
13
      89.    Plaintiff incorporates by reference and realleges each and every allegation set forth
14
   above, as though fully set forth herein.
15
      90.    The Defendants, by virtue of their positions with Asyst and their specific acts,
16
   were, at the time of the wrongs alleged herein, controlling persons of Asyst within the meaning of
17
   §20(a) of the Exchange Act. They had the power and influence and exercised the same to cause
18
   Asyst to engage in the illegal conduct and practices complained of herein.
19
                                     **COUNT IV**
20
                                    **Accounting**
21
      91.    Plaintiff incorporates by reference and realleges each and every allegation set forth
22
   above, as though fully set forth herein.
23
      92.    At all relevant times, Defendants, as directors and/or officers of Asyst, owed the
24
   Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.
25
      93.    In breach of their fiduciary duties owed to Asyst and its shareholders, the
26
   Defendants caused Asyst, among other things, to grant backdated stock options to themselves
27
   and/or certain other officers and directors of Asyst and/or failed to properly investigate whether
28

1  these grants had been improperly made.  By this wrongdoing, the Defendants breached their
2  fiduciary duties owed to Asyst and its shareholders.

3      94.    The Defendants possess complete and unfettered control over the improperly
4  issued stock option grants and the books and records of the Company concerning the details of
5  such improperly backdated stock option grants to certain of the Defendants.

6      95.    As a result of Defendants' misconduct, Asyst has been substantially injured and
7  damaged financially and is entitled to a recovery as a result thereof, including the proceeds of
8  those improperly granted options which have been exercised and sold.

9      96.    Plaintiff demands an accounting be made of all stock option grants made to any of
10  the Defendants, including, without limitation, the dates of the grants, the amounts of the grants,
11  the value of the grants, the recipients of the grants, the exercise date of stock options granted to
12  any of the Defendants, as well as the disposition of any proceeds received by any of the
13  Defendants via sale or other exercise of backdated stock option grants received by those
14  Defendants.

15                                    **COUNT V**

16              **Breach of Fiduciary Duty and/or Aiding and Abetting**
                            **Against All Defendants**
17
18      97.    Plaintiff incorporates by reference and realleges each and every allegation set forth
    above, as though fully set forth herein.
19
20      98.    Each of the Defendants agreed to and did participate with Bonora and the other
    Defendants and/or aided and abetted one another in a deliberate course of action designed to
21
    divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.
22
23      99.    The Defendants have violated fiduciary duties of care, loyalty, candor and
    independence owed to Asyst and its public shareholders, have engaged in unlawful self-dealing
24
    and have acted to put their personal interests and/or their colleagues' interests ahead of the
25
    interests of Asyst and its shareholders.
26
27      100.   As demonstrated by the allegations above, Defendants failed to exercise the care
    required, and breached their duties of loyalty, good faith, candor and independence owed to Asyst
28

1  and its public shareholders, and they failed to disclose material information and/or made material

2  misrepresentations to shareholders regarding Defendants' option backdating scheme.

3      101.    By reason of the foregoing acts, practices and course of conduct, the Defendants

4  have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations

5  toward Asyst and its public shareholders.

6      102.    As a proximate result of Defendants' conduct, in concert with Bonora, Asyst has

7  been injured and is entitled to damages.

8                              **COUNT VI**

9                  **Abuse of Control Against All Defendants**

10      103.    Plaintiff incorporates by reference and realleges each and every allegation set forth

11  above, as though fully set forth herein.

12      104.    The Defendants employed the alleged scheme for the purpose of maintaining and

13  entrenching themselves in their positions of power, prestige and profit at, and control over, Asyst,

14  and to continue to receive the substantial benefits, salaries and emoluments associated with their

15  positions at Asyst. As a part of this scheme, Defendants actively made and/or participated in the

16  making of or aided and abetted the making of, misrepresentations regarding Asyst.

17      105.    Defendants' conduct constituted an abuse of their ability to control and influence

18  Asyst.

19      106.    By reason of the foregoing, Asyst has been damaged.

20                              **COUNT VII**

21                  **Gross Mismanagement Against All Defendants**

22      107.    Plaintiff incorporates by reference and realleges each and every allegation set forth

23  above, as though fully set forth herein.

24      108.    Defendants had a duty to Asyst and its shareholders to prudently supervise, manage

25  and control the operations, business and internal financial accounting and disclosure controls of

26  Asyst.

27      109.    Defendants, by their actions and by engaging in the wrongdoing described herein,

28  abandoned and abdicated their responsibilities and duties with regard to prudently managing the

businesses of Asyst in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Asyst's affairs and in the use and preservation of Asyst's assets.

110.   During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Asyst to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Asyst, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged Asyst.

111.   By reason of the foregoing, Asyst has been damaged.

## COUNT VIII

### Constructive Fraud Against All Defendants

112.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

113.   As corporate fiduciaries, Defendants owed to Asyst and its shareholders a duty of candor and full accurate disclosure regarding the true state of Asyst's business and assets and their conduct with regard thereto.

114.   As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Asyst's shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of Asyst.  Thus they have committed constructive fraud and violated their duty of candor.

115.   By reason of the foregoing, Asyst has been damaged.

## COUNT IX

### Corporate Waste Against All Defendants

116.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

117.   By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to

1  Defendants via the option backdating scheme, Defendants have caused Asyst to waste valuable
2  corporate assets.

3      118.    As a result of Defendants' corporate waste, they are liable to the Company.

4                              **COUNT X**

5                  **Unjust Enrichment Against All Defendants**

6      119.    Plaintiff incorporates by reference and realleges each and every allegation set forth
7  above, as though fully set forth herein.

8      120.    As a result of the conduct described above, Defendants will be and have been
9  unjustly enriched at the expense of Asyst, in the form of unjustified salaries, benefits, bonuses,
10 stock option grants and other emoluments of office.

11     121.    All the payments and benefits provided to the Defendants were at the expense of
12 Asyst. The Company received no benefit from these payments. Asyst was damaged by such
13 payments.

14     122.    Defendant Bonora sold Asyst stock for a profit during the period of deception,
15 misusing confidential non-public corporate information. This defendant should be required to
16 disgorge the gains which he has and/or will otherwise unjustly obtain at the expense of Asyst. A
17 constructive trust for the benefit of the Company should be imposed thereon.

18                             **COUNT XI**

19              **Against the Officer Defendants for Rescission**

20     123.    Plaintiff incorporates by reference and realleges each and every allegation
21 contained above as though fully set forth herein.

22     124.    As a result of the acts alleged herein, the stock option contracts between the Officer
23 Defendants and Asyst entered into during the relevant period were obtained through Defendants'
24 fraud, deceit, and abuse of control. Further, the backdated stock options were illegal grants and
25 thus invalid as they were not authorized in accordance with the terms of the publicly filed
26 contracts regarding the Officer Defendants' employment agreements and the Company's stock
27 option plan which was also approved by Asyst shareholders and filed with the SEC.

28

1        125.    All contracts which provide for stock option grants between the Officer Defendants

2 and Asyst and were entered into during the relevant period should, therefore, be rescinded, with

3 all sums paid under such contracts returned to the Company, and all such executory contracts

4 cancelled and declared void.

5                                 **COUNT XII**

6              **Against Insider Selling Defendant Bonora for Violation of**
                    **California Corporations Code §25402**

7

8        126.    Plaintiff incorporates by reference and realleges each and every allegation set forth
above, as though fully set forth herein.

9

10        127.    At the time that the Insider Selling Defendant sold his Asyst common stock as set

11 forth herein at ¶49, by reason of his high executive positions with Asyst, the Insider Selling

12 Defendant had access to highly material information regarding the Company, including the

13 information set forth herein regarding the true adverse facts of Asyst's improper accounting.

14        128.    At the time of such sales, that information was not generally available to the public

15 or the securities markets.  Had such information been generally available, it would have
significantly reduced the market price of Asyst shares at that time.

16

17        129.    The Insider Selling Defendant had actual knowledge of material, adverse non-

18 public information and thus sold his Asyst common stock in California in violation of California
Corporations Code §25402.

19

20        130.    Pursuant to California Corporations Code §25502.5, Insider Selling Defendant

21 Bonora is liable to Asyst for damages in an amount up to three times the difference between the

22 price at which Asyst common stock was sold by this defendant, and the market value which that

23 Asyst common stock would have had at the time of the sale if the information known to this

24 defendant had been publicly disseminated prior to that time and a reasonable time had elapsed for
the market to absorb the information.

25

26

27

28

1

## COUNT XIII

2

**Against Insider Selling Defendant Bonora for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

3

4

131.    Plaintiff incorporates by reference and realleges each and every allegation set forth

above, as though fully set forth herein.

5

6

132.    At the time of the stock sales set forth herein, the Insider Selling Defendant knew

the information described above, and sold Asyst common stock on the basis of such information.

7

8

133.    The information described above was proprietary non-public information

concerning the Company's financial condition and future business prospects. It was a proprietary

9

asset belonging to the Company, which the Insider Selling Defendant used for his own benefit

10

when he sold Asyst common stock.

11

12

134.    At the time of his stock sales, the Insider Selling Defendant knew that the

Company's revenues were materially overstated. The Insider Selling Defendant's sales of Asyst

13

common stock while in possession and control of this material adverse non-public information

14

was a breach of his fiduciary duties of loyalty and good faith.

15

16

135.    Since the use of the Company's proprietary information for his own gain

constitutes a breach of the Insider Selling Defendant's fiduciary duties, the Company is entitled to

17

the imposition of a constructive trust on any profits the Insider Selling Defendant obtained

18

thereby.

19

## PRAYER FOR RELIEF

20

WHEREFORE, plaintiff demands judgment as follows:

21

A.    Awarding money damages against all Defendants, jointly and severally, for all

22

losses and damages suffered as a result of the acts and transactions complained of herein, together

23

with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

24

B.    Directing all Defendants to account for all damages caused by them and all profits

25

and special benefits and unjust enrichment they have obtained as a result of their unlawful

26

conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale

27

proceeds and imposing a constructive trust thereon;

28

1       C.      Directing Asyst to take all necessary actions to reform and improve its corporate

2 governance and internal control procedures to comply with applicable law, including, but not

3 limited to, putting forward for a shareholder vote resolutions for amendments to the Company's

4 By-Laws or Articles of Incorporation and taking such other action as may be necessary to place

5 before shareholders for a vote adoption of the following Corporate Governance policies:

6           (i)      a proposal requiring that the office of CEO of Asyst and Chairman

7 of the Asyst Board of Directors be permanently held by separate individuals and that the

8 Chairman of the Asyst Board meets rigorous "independent" standards;

9           (ii)     a proposal to strengthen the Asyst Board's supervision of operations

10 and develop and implement procedures for greater shareholder input into the policies and

11 guidelines of the Board;

12           (iii)    appropriately test and then strengthen the internal audit and control

13 function;

14           (iv)    rotate independent auditing firms every five years;

15           (v)      control and limit insider stock selling and the terms and timing of

16 stock option grants; and

17           (vi)    reform executive compensation.

18       D.      Ordering the imposition of a constructive trust over Defendants' stock options and

19 any proceeds derived therefrom;

20       E.      Awarding punitive damages;

21       F.      Awarding costs and disbursements of this action, including reasonable attorneys',

22 accountants', and experts' fees; and

23       G.      Granting such other and further relief as this Court may deem just and proper.

1                                                    **JURY DEMAND**

2        Plaintiff demands a trial by jury.

3    DATED: August 1, 2006                     LERACH COUGHLIN STOIA GELLER
4                                              RUDMAN & ROBBINS LLP
                                            SHAWN A. WILLIAMS

5

6                                         _____
                                              SHAWN A. WILLIAMS
7

8                                          100 Pine Street, Suite 2600
                                          San Francisco, CA  94111
9                                          Telephone: 415/288-4545
                                          415/288-4534 (fax)

10                                        LERACH COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
11                                        WILLIAM S. LERACH
                                          DARREN J. ROBBINS
12                                        TRAVIS E. DOWNS III
                                          655 West Broadway, Suite 1900
13                                        San Diego, CA  92101
                                          Telephone:  619/231-1058
14                                        619/231-7423 (fax)

15                                        Attorneys for Plaintiff

16   S:\CptDraft\Derivative\Cpt Asyst Tech Derv.doc

17

18

19

20

21

22

23

24

25

26

27

28

1   **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2       Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3   named parties, there is no such interest to report.

4

5

6                              ATTORNEY OF RECORD FOR PLAINTIFF
                           JAMES G. BUSSING

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ASYST TECHNOLOGIES, INC. VERIFICATION

I, James G. Bussing, hereby verify, under penalty of perjury, that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: 7 - 2 4 - 0 6

James G. Bussing