IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ASYST TECHNOLOGIES, INC. DERIVATIVE LITIGATION<br><br>This Document Relates to:<br>    ALL ACTIONS | No. C-06-04669 EDL<br><br>**ORDER GRANTING WITH LEAVE TO AMEND NOMINAL DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION TO DISMISS** |

In this shareholder derivative action, Plaintiffs allege that Defendants, officers and directors of Asyst, violated federal securities laws as well as state laws from 1995 through 2006 when they backdated stock options and made false filings with the Securities and Exchange Commission to cover up their conduct. Before the Court are Motions to Dismiss Plaintiffs' Consolidated Complaint filed by Nominal Defendant Asyst and the Individual Defendants on March 18, 2008.[1] These matters were fully briefed and the Court held a hearing on April 29, 2008. For the reasons stated at the hearing, Nominal Defendant's Motion to Dismiss is granted with leave to amend and Individual Defendants' Motion to Dismiss is granted in part with leave to amend and denied in part.

---

[1] Individual Defendants seek judicial notice of documents filed with the Securities and Exchange Commission and with the California Secretary of State. See Defs' Req. for Jud. Notice at 2-3; Supp. Req. for Jud. Notice at 3. Plaintiffs seek judicial notice of documents filed with the SEC. See Pls.' Req. for Jud. Notice at 1-2. Generally, on a motion to dismiss, a court's review is limited to the contents of the complaint, including any material that is properly presented to the court as part of the complaint. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). In addition, a court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. Id. Thus, "judicial notice is appropriate for SEC filings, press releases, and accounting rules as they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'" In re Network Assocs. Sec. Litig., 2003 U.S. Dist. LEXIS 14442, *2 n.3 (N.D. Cal. Mar. 25, 2003) (citing Fed. R. Evid. 201(b)). These documents are matters of public record and therefore are judicially noticeable. The requests for judicial notice are granted.

**Nominal Defendant's Motion to Dismiss**

Derivative actions are subject to specific pleading requirements:

(b) Pleading Requirements. The complaint must be verified and must:
(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
(3) state with particularity:
(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
(B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b). Asyst argues that Plaintiffs lack standing because they failed to adequately plead continuous ownership and demand futility. As stated at the hearing, the allegations in Plaintiffs' complaint are insufficient to meet the Rule 23.1 pleading requirements.

Plaintiffs conceded at the hearing that they have not adequately pled continuous ownership. "[A] derivative plaintiff has no standing to challenge option transactions that occurred prior to the time that plaintiff owned company stock." In re Verisign Derivative Litigation, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007) (citing In re Computer Sciences Corp. Derivative Litigation, 244 F.R.D. 580, 591 (C.D. Cal. 2007)). Here, Plaintiffs' complaint alleges only that: "Plaintiffs James G. Bussing and Thomas Flood are shareholders of Asyst, who hold and have continually held Asyst stock." Consolidated Compl. ¶ 20. This allegation is insufficient to satisfy Rule 23.1(b)(1). See Verisign, 531 F. Supp. 2d at 1202 (holding that the plaintiffs failed to adequately allege standing by continuous stock ownership where the complaint alleged only that the plaintiffs "have owned Verisign stock during the relevant period . . . and continue to own the Company's common stock," and stating that the plaintiffs must "unambiguously indicate in any amended complaint the dates they purchased Verisign stock, and whether they have continuously owned Verisign stock from the time of purchase up to the present."); see also In re Maxim Integrated Products Inc. Derivative Litigation, 2007 WL 2745805, *3-4 (N.D. Cal. July 25, 2007) (finding that the plaintiffs' allegation that they owned stock "at all relevant times" was insufficient to allege standing under FRCP 23.1, and stating that the amended complaint must indicate "when Plaintiffs bought stock in Maxim, and must state that they have owned stock continuously since the date of the filing of the lawsuit.); In re Sagent Technology Inc. Derivative Litigation, 278 F. Supp. 2d 1079, 1096 (N.D. Cal 2003) (stating

that the amended complaint must indicate when plaintiffs bought stock and must state that they have continuously owned stock since the date of the filing of the lawsuit.).

Moreover, as discussed at the hearing, Plaintiffs have not adequately pled demand futility. Plaintiffs concede that they did not make a demand on the directors, but allege that such a demand would have been futile because: (1) the Director Defendants conceded that they were interested by forming the Special Committee to investigate backdating allegations; (2) there was no legitimate business judgment justification for backdating; (3) four director Defendants received backdated options; (4) two director Defendants served on the Compensation Committee during the relevant time; (5) four director Defendants served on the Audit Committee during the relevant time; (6) the director Defendants have professional and personal relationships with each other that preclude objectivity; (7) all direct Defendants authorized the filing of Company proxy statements during the relevant time; (8) all director Defendants signed Asyst's Form 10-Ks; (9) all director Defendants were negligent; (10) all director Defendants face a substantial likelihood of liability in connection with their misleading disclosures in connection with the Company's restatement of financial results. Compl. ¶ 103.

Asyst is a California corporation, so California state law establishes the circumstances under which demand would be futile. See In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970-989-90 (9th Cir. 1999). Under California law, which is often guided by cases from Delaware, the question is whether Plaintiffs have alleged facts demonstrating a reasonable doubt that: (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Oakland Raiders v. Nat'l Football League, 93 Cal.App.4th 572, 587 (2001) (citing Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984) (holding that if a derivative suit challenges a decision made by a board of directors, then plaintiffs are excused from making a demand if "under the particularized facts alleged, a reasonable doubt is created that (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."); see also In re CNET Networks, Inc. Shareholder Litigation, 483 F. Supp. 2d 947, 954 (N.D. Cal. 2007) ("Most of plaintiffs' allegations, however, refer to the board's actions, such as ratifying option grants, preparing and signing proxy

3

1    statements and financial statements, and financially benefitting from backdated options.
2    Accordingly, the <u>Aronson</u> test for demand futility applies."); <u>cf.</u> <u>Rales v. Blasband</u>, 634 A.2d 927,
3    934 (Del.1993) ("Consistent with the context and rationale of the <u>Aronson</u> decision, a court should
4    not apply the <u>Aronson</u> test for demand futility where the board that would be considering the
5    demand did not make a business decision which is being challenged in the derivative suit. This
6    situation would arise in three principal scenarios: (1) where a business decision was made by the
7    board of a company, but a majority of the directors making the decision have been replaced; (2)
8    where the subject of the derivative suit is not a business decision of the board; and (3) where, as
9    here, the decision being challenged was made by the board of a different corporation.").  To show
10   that demand would have been futile, the plaintiff must show that a majority of directors were not
11   independent or disinterested.  <u>Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart</u>, 845
12   A.2d 1040, 1046 (Del.2004).

13        The application of the demand futility test is based on the composition of the board at the
14   time the lawsuit is initiated, as that is the board on which the demand would have been made.  <u>See</u>
15   <u>Verisign</u>, 531 F. Supp. 2d at 1189 (citing <u>Harris v. Carter</u>, 582 A.2d 222, 228 (Del. Ch. 1990)).
16   When the present action was commenced, Asyst's Board consisted of seven members:  Stephen
17   Schwartz, Stanley Grubel, Tsuyoshi Kawanishi, Robert McNamara, Anthony Santelli, William
18   Simon and Walter Wilson.  Compl. ¶ 103.  The allegedly illegal backdating occurred on eight dates
19   between August 1995 and April 2004.  According to the complaint, only Mr. Simon was not a board
20   member at all during that time.  <u>See</u> Compl. ¶ 29.  Thus, a majority of directors on the Board when
21   the complaint was filed were on the Board during at least part of the time when the alleged illegal
22   activity took place.

23        To show interestedness, a plaintiff must plead facts demonstrating that a director is
24   "personally interested in the outcome of the litigation, [such] that the director will personally benefit
25   or suffer as a result of the lawsuit in a manner that differs from shareholders generally."  <u>In re Tyson</u>
26   <u>Foods Inc Consolidated Shareholder Litigation</u>, 919 A.2d 563, 581 (Del. Ch. 2007).  Put another
27   way,
28       At the pleading stage, Board independence and compliance with the business
    judgment rule are presumed. [citation omitted].  Demand will be excused only if the

4

> plaintiff's allegations show the defendants' actions "were so egregious that a substantial likelihood of director liability exists." [citation omitted]. "[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." [citation omitted].

Silicon Graphics, 183 F.3d at 990. "A plaintiff can overcome the presumption of director disinterestedness only with particularized facts indicating that the director's actions were 'so egregious that a substantial likelihood of directorial liability exists.'" Verisign, 531 F. Supp. 2d at 1192 (citing Silicon Graphics, 183 F.3d at 990) (quoting Aronson, 472 A.2d at 805)). However, "[b]ackdating options qualifies as one of those 'rare cases [in which] a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'" Ryan v. Gifford, 918 A.2d 341, 355-56 (2007) (quoting Aronson, 473 A.2d at 815).

Here, with respect to demand futility, Plaintiffs allege that four current directors received backdated stock options. See Compl. ¶¶ 68, 72 (Director Wilson received stock option grants on January 17, 1997 and June 16, 2000); ¶¶ 69, 72 (Director Kawanishi received stock option grants on February 2, 1998 and June 16, 2000); ¶ 72 (Director McNamara received stock options grants on June 16, 2000); ¶ 72 (Director Grubel received stock option grants on June 16, 2000). They also allege that two current directors served on Asyst's Compensation Committee during the time that stock options were allegedly backdated. See Compl. ¶ 25 (Director Grubel served on Compensation Committee since 1998); ¶ 28 (Director Santelli served on Compensation Committee since 2001). Plaintiffs also allege that all current directors are interested because they signed off on allegedly false and misleading financial statements. See Compl. ¶ 103(g), (h).

However, as discussed at the hearing, Plaintiffs have failed to plead with sufficient particularity that a majority of directors received illegally backdated options. See Zoran, 511 F. Supp. 2d at 1003 ("[I]f plaintiffs can plead with particularity that the directors received backdated grants, those directors will be considered interested."); In re CNET Networks, 483 F. Supp. 2d at 956, 958, 964 (stating that at the pleading stage the question is whether the plaintiff has alleged circumstances from which it may be reasonably inferred that backdating as opposed to an innocent bookkeeping error occurred). Although Plaintiffs have alleged a statistical analysis in an attempt to

5

show backdating (see Compl. ¶¶ 64-66), Plaintiffs have not made any allegations regarding whether the stock option grants were discretionary or nondiscretionary, which is often an important aspect of backdating. See In re CNET Networks, 483 F. Supp. 2d at 959 (finding that the plaintiffs had not made a sufficient showing of backdating where the defendant provided evidence that stock options were granted on a certain day to correspond with the grantee's commencement of employment); In re Zoran Corporation Derivative Litigation, 511 F. Supp. 2d 986, 1005 (N.D. Cal. 2007) ("Coupled with the statistical pattern of favorable grant dates and the fact that the grant date could be chosen at the will of the compensation committee, plaintiff has plainly succeeded in pleading that these grants were backdated."); In re MIPS Techs., Inc. Derivative Litigation, 2008 WL 131915, * 8 (N.D. Cal. 2008) ("Knowingly granting or approving stock options can render a director interested, while 'mere membership' of a committee is insufficient."); see also Conrad v. Blank, 940 A.2d 28, 39 (Del. Ch. 2007) (finding that where a stock option plan gives no discretion as to exercise price, it would be less likely that the compensation committee could innocently backdate options). Indeed, Asyst argues in its motion to dismiss that at least some grants were automatic, non-discretionary, fixed-date grants pursuant to Asyst's 1993 Non-Employee Directors' Plan made on the election date or the anniversary date of a nonemployee director's election to the Board. See Supp. Ex. O at p 317.

Further, while Plaintiffs provided information in their opposition on the disproportionate return on investment to management as opposed to shareholder return (see Opp'n at 5), that information, which is relevant to showing that directors received backdated options, is not contained in the complaint. Moreover, Plaintiffs have failed to adequately plead that all directors are interested because they approved financial statements, including proxy statements and SEC filings. See Compl. ¶¶ 63, 84-86, 103(h). Specifically, they have not made allegations as to the level of participation of the directors in the approvals. See Howard v. Everex Sys., 228 F.3d 1057, 1061 n. 5 (9th Cir. 2000) ("Conversely, we have held that substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the actor's actual making of the statements."); Computer Sciences, 2007 WL 1321715, *9 ("Likewise, a Complaint cannot establish a "substantial likelihood" of director liability that excuses demand by merely making conclusory allegations that a director

6

disseminated financial statements he knew to be false.").

Accordingly, Asyst's Motion to Dismiss is granted with leave to amend to allege continuous ownership and demand futility.

**Individual Defendants' Motion to Dismiss**

The Individual Defendants move to dismiss Plaintiffs' consolidated complaint on the grounds that many of Plaintiffs' claims are time-barred and that the remaining claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

**Statute of limitations**

**Section 10(b)**

The statute of limitations for claims under section 10(b) is the earlier of two years after the discovery of the violation or five years from the alleged violation. 28 U.S.C. § 1658(b). The Ninth Circuit has not decided whether discovery of the violation requires actual notice or inquiry notice. See Livid Holdings Ltd v. Salomon Smith Barney, 416 F.3d 940, 951 (9th Cir. 2005). The outer limitations period serves as a statute of repose in lieu of equitable tolling. See Zoran, 511 F. Supp. 2d at 1013-14 (holding that five-year statute of repose applied because: "Outsiders like plaintiff did not have superpowers to detect secret backdating inside the company," and rejecting argument that the statute should be tolled and begin to run from the last misleading statement made by defendants). Plaintiffs brought this action on August 1, 2006. The Court agrees with the Zoran court's observation that unannounced backdating within a company is unknown to the average shareholder. Therefore, the five year statute of repose applies and claims alleging events preceding August 1, 2001 are time-barred.

### Section 14(a)

Section 14(a) prohibits the solicitation of proxy votes "in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a). Plaintiffs' complaint alleges that the 1994-2005 Proxy Statements violate section 14(a) because they omitted the facts regarding backdating. Compl. ¶ 120. The statute of limitations for claims under Section 14(a) is the earlier of one year after the discovery of the violation or three years from the alleged violation. Verisign, 531 F. Supp. 2d at 1212 (citing Westinghouse Elec. Corp. by Levit v. Franklin, 993 F.2d 349, 353 (3d Cir. 1993)); Zoran, 511 F. Supp. 2d at 1017 (determining that the limitations for § 14(a) claims operates in the same manner as the limitations period for § 10(b) claims in that the longer statute of repose applies because the plaintiffs would not be on notice for backdating). Therefore, Plaintiffs' claims under section 14(a) based on backdating that pre-dated August 1, 2003 are time-barred.

### Section 20(a)

Under section 20(a), joint and several liability can be imposed on persons who directly or indirectly control a violator of the securities laws. 15 U.S.C. § 78t(a). A claim that individual defendants are controlling persons under this section must allege: (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator. America West, 320 F.3d at 945; Heliotrope Gen'l Inc. v. Ford Motor Co., 189 F.3d 971, 978 (9th Cir. 1999). Defendants argue that to the extent that Plaintiffs' primary violations of section 10(b) and section 14(a) are time-barred, the section 20(a) claims are also time-barred. However, a section 20(a) claim is not necessarily barred because the predicate claim is time-barred. See Johnson v. Aljian, 394 F. Supp. 2d 1184, 1195-96 (C.D. Cal. 2004) ("The Court finds no reason to hold that Plaintiff's § 20A claim is barred simply because the predicate claim upon which it is based is time barred. Although cases have dismissed a plaintiff's § 20A claim upon the dismissal of the predicate claim, the dismissal of the predicate claim in those cases was based on a defect in the predicate claim other than the statute of limitations."). Accordingly, Plaintiffs' section 20(a) claims are not time-barred on this basis.

//

**State law claims**

Plaintiffs allege state law claims for: (1) accounting; (2) breach of fiduciary duty; (3) disseminating false and misleading information; (4) abuse of control; (5) gross mismanagement; (6) constructive fraud; (7) corporate waste; (8) unjust enrichment; (9) rescission; (10) violation of California Corporations Code § 25402; (11) breach of fiduciary duties for insider trading; and (12) breach of contract. To the extent that Plaintiffs' complaint is based on allegations of fraud, the three year limitations period for fraud would apply. See Cal. Code Civ. Proc. § 338(d); City of Vista v. Robert Thomas Sec., Inc., 84 Cal.App.4th 882, 889 (2000) (where gravamen of complaint is fraud, claims subject to three year statute of limitations). Assuming the three year statute of limitations applies, the limitations period begins to run when a claim accrues, which is normally at the time when the cause of action is complete with all its elements. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (2005). A plaintiff may invoke the "discovery rule" under which a cause of action does not accrue until the plaintiff discovers, or has reason to discover, the cause of action. Id. at 808. Here, Defendants argue that Plaintiffs were on notice of the facts supporting their state law claims shortly after the stock option grants were made. As the court recognized in Zoran, however, shareholder plaintiffs do not have "superpowers" to discovery secret backdating. See Zoran, 511 F. Supp. 2d at 1014. Therefore, the three year statute of limitations applies to bar Plaintiffs' state law claims prior to August 1, 2003 but not thereafter.[2]

**Failure to state a claim under federal law**

Defendants argue that Plaintiffs failed to state a derivative claim for federal securities violations. In complaints not alleging fraud, a short and plain statement of the claim is all that is required under Rule 8(a). When pleading fraud, however, a plaintiff must meet the heightened pleading standard of Rule 9(b), which requires allegations of particular facts going to the circumstances of the fraud, including time, place, persons involved, statements made and an

---

[2] Defendants argue that the statute of limitations in California Corporations Code § 25506 applies to Plaintiffs' claims under California Corporations Code § 25402, which is California' insider trading statute. Under section 25506, the statute of limitations requires suit within five years from the act or transaction or two years from discovery, whichever first expires. See Cal. Corp. Code § 25506(b). On its face, however, section 25506 does not appear to apply to claims brought under section 25402, and Defendants have cited no authority in which a court has applied this statute of limitations to a claim under section 25402.

9

explanation of how or why such statements are false and misleading. See In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 n. 7 (9th Cir. 1994). The Private Securities Litigation Reform Act requires plaintiffs alleging violation of the Securities Act to specify each misleading statement, to explain why the statement was misleading and, if an allegation is made on information and belief, to list all facts upon which that belief is formed. 15 U.S.C. § 78u-4(b)(1). The complaint must also state with particularity facts giving rise to a strong inference that the defendant knowingly or with deliberate recklessness made false statements or omitted a material fact. 15 U.S.C. § 78u-4(b)(2).

### 1. Section 10(b) (count I against all Defendants)

To state a claim under section 10(b), a plaintiff must plead facts to show: (1) a material misrepresentation; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005); 15 U.S.C. § 78j(b). Defendants argue that Plaintiffs cannot meet the "in connection with" elements. Plaintiffs, however, have adequately alleged this element by alleging that the grants of options were for the purchase of shares of common stock (Compl. ¶ 53) and that the misrepresentations about backdating were in connection with stock option grants (e.g., Compl. ¶ 63). See Zoran, 511 F. Supp. 2d at 1011-12 ("A stock option is a sale of securities sufficient to fulfill the 'in connection with' the sale of securities element.").

Defendants also argue that Plaintiffs failed to allege facts giving rise to a strong inference of scienter. The PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Ninth Circuit has stated that the allegations of scienter must at a minimum show deliberate recklessness: "we read the PSLRA language that the particular facts must give rise to a 'strong inference ... [of] the required state of mind' to mean that the evidence must create a strong inference of, at a minimum, 'deliberate recklessness.'" Silicon Graphics, 183 F.3d at 977. In Tellabs, Inc. V. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2502 (2007), the Supreme Court defined "strong inference:" "To qualify as 'strong' within the intendment of § 21D(b)(2), an inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 127 S. Ct. at 2504-05.

10

Here, Plaintiffs allege that Asyst restated its financial reports after the internal investigation (Compl. ¶ 6), and that some Individual Defendants exercised their options at an alleged cost to Asyst (Compl. ¶ 104). Plaintiffs also allege that certain directors received backdated options (Compl. ¶¶ 68, 69, 72), and that two directors served on the Compensation Committee (Compl ¶¶ 25, 28). Plaintiffs also allege that Individual Defendants' high level positions within the Company show that they were at least reckless in permitting backdating. Compl. ¶¶ 1, 2, 50, 64, 96. Plaintiffs also allege that Individual Defendants approved financial reports. Compl. ¶ 88 (alleging that some defendants signed Forms 10-K); ¶ 38, 103 (Board approved false statements when it authorized the filing of the document with the SEC); ¶¶ 54-63 (Defendants reviewed and approved proxy statements omitting backdating infomation); ¶ 79, 180 (financial statements failed to account for in-the-money grants as compensation expense). These allegations, however, do not amount to a strong showing of scienter for all of the Defendants. With respect to Mr. Grubel, who served on the Compensation Committee and allegedly received backdated options, Plaintiffs' allegations of scienter are sufficient because although conclusory allegations regarding committee membership is not enough to make a strong inference of scienter, Plaintiffs have also alleged receipt of backdated options. See Zoran, 511 F. Supp. 2d at 1003 ("[I]f plaintiffs can plead with particularity that the directors received backdated grants, those directors will be considered interested."); Verisign, 531 F. Supp. 2d at 1207 (finding that conclusory allegations about committee membership are insufficient to make strong inference of scienter). Moreover, while mere allegations of approving allegedly false financial statements are insufficient by themselves to show scienter for purposes of a motion to dismiss, allegations of recklessness in doing so are sufficient. See Howard, 228 F.3d at 1062 (merely signing financial report not enough to state claim for securities fraud); but see Zoran, 327 F. Supp. 2d at 1172 (allegations that the defendants signed false financial statements directly evidence scienter).

Individual Defendants' Motion to Dismiss is granted with leave to amend as to Individual Defendants other than Mr. Grubel with respect to Plaintiffs' section 10(b) claim.

**2.    Section 14(a) (count II against all Defendants)**

To state a derivative claim under section 14(a), a plaintiff must plead facts to show that a

11

defendant made a material misstatement in a proxy statement which caused the Company injury, and that the proxy solicitation was the transactional cause of harm of which plaintiff complains. See 15 U.S.C. § 78n(a); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384 (1970); Zoran, 511 F. Supp. 2d at 1015. Unlike Section 10(b), Section 14(a) "lacks any reference to a 'manipulative device or contrivance ... to indicate a requirement of scienter." In re McKesson HBOC, Inc. Sec. Litig., 126 F.Supp.2d 1248, 1263 (N.D. Cal.2000). Accordingly, negligence is sufficient to support a claim for a violation of § 14(a) . Id. at 1267 ("a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence").

Given the Court's ruling that section 14(a) claims pre-dating August 1, 2003 are time-barred, the only actionable proxy statement is the 2004 Proxy Statement. With respect to this proxy statement, Plaintiffs have failed to allege the transactional causation element. As the court in In re iBasis explained:

> Transactional causation for stock option grant manipulation customarily involves a three-step-process. First, there is a stock option grant manipulation that pre-dates a proxy statement. Then, there is a false or misleading proxy statement that leads to approval of the recommended action, generally the reelection of directors or the amendment of the Company's stock option plan. Finally, these directors grant additional manipulated stock options. This is the scenario alleged in Zoran and the Plaintiffs argue that the same situation exists with iBasis. They have alleged the first two requirements but have failed to allege the last required step, that any related-but not essentially preexisting-injury occurred after the shareholders approved the recommended action in the proxy statement. The Plaintiffs have failed to establish the required transactional causation linking a vote in favor of the April 13, 2005 proxy statement with new injury to iBasis.

In re iBasis, 532 F. Supp. 2d at 223. Here, Plaintiffs have failed to allege that any additional backdated stock options were granted after the 2004 statement issued in July, and the last challenged grant occurred in April 2004. Accordingly, Plaintiffs have failed to state a claim for section 14(a), and Defendants' Motion to Dismiss this claim is granted with leave to amend.

### 3. Section 20(a) (count III against all Defendants)

A claim that individual defendants are controlling persons under section 20(a) must contain allegations that: (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator. See Howard, 228 F.3d at 1065. To the extent that the Court has granted Defendants' Motion to Dismiss with leave to amend Plaintiffs' section 10(b) and 14(a) claims, which are the predicates to the section 20(a) claims, the section 20(a) claims are

dismissed with leave to amend.

**Failure to state a claim under state law**

Defendants argue generally that Plaintiffs' state law claims must be pled with particularity pursuant to Rule 9 in that they sound in fraud.  While Plaintiffs' complaint is generally based on Defendants' alleged fraudulent concealment of the backdating options scheme (Compl. ¶ 1), Defendants have cited no authority that every claim, whether sounding in fraud or not, is subject to that heightened pleading standard.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-05 (9th Cir. 2003) (holding that "in a case where fraud is not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).").  While the Court does not foreclose further argument based on authority that a particular claim, while not on its face sounding in fraud, nonetheless amounts to fraud, Defendants have not done so yet except as to insider trading.

**1.     Breach of fiduciary duties (counts V, VI, VII, VIII, IX, X against all Defendants)**

With respect to breaches of fiduciary duties, Plaintiffs allege that Defendants breached their duties to act in good faith and exercise reasonable diligence (Compl. ¶¶ 40-43) by colluding to backdate stock option grants, to violate GAAP, to produce and disseminate false financial reports and to file false Proxy Statements.  Compl. ¶ 96.  They allege that Defendants repeatedly issued proxy statements and financial results stating that stock options would be granted at 100% of fair market value, when in reality the options were backdated at less than fair market value.  Compl. ¶¶ 54-66; 77, 99-100.  Plaintiffs also allege that Defendants knew the backdating scheme was causing the company to report inflated earnings, as evidenced by the restatement.  Compl. ¶ 79.  They also allege that certain Defendants exercised backdated options to sell over $27 million worth of stock.  Compl. ¶ 104.  Plaintiffs also allege that the conduct was not an exercise of good faith business judgment, and that as a result of the breaches of fiduciary duties, the company was harmed.  Compl. ¶¶ 97-98.

Plaintiffs' breach of fiduciary duty claims satisfy Rule 8's pleading standard.  Defendants' motion to dismiss these claims under Rule 12(b)(6) is denied.

13

//

### 2.     Corporate waste (count XI against all Defendants)

"To recover on a claim of corporate waste, the plaintiffs must shoulder the burden of proving that the exchange was 'so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'" See In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 74 (Del. 2006) ("A claim of waste will arise only in the rare, 'unconscionable case where directors irrationally squander or give away corporate assets.' This onerous standard for waste is a corollary of the proposition that where business judgment presumptions are applicable, the board's decision will be upheld unless it cannot be 'attributed to any rational business purpose.'"); Brehm v. Eisner, 746 A.2d 244, 263 (Del. 2000) ("Roughly, a waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."). Here, Plaintiffs have alleged that Defendants committed numerous acts leading to massive corporate waste which served no legitimate corporate purpose. Compl. ¶¶ 64-80 (stock options dated on the lowest point of the month or quarter); ¶¶ 98-100 (alleging damages to the company and unjust enrichment of senior officers). Plaintiffs also alleges that Asyst received no consideration. Compl. ¶¶ 162-163. While adequately pled claims of deliberately backdated stock options may perhaps support a claim of corporate waste, the current allegations do not suffice, so Defendants' Motion to Dismiss this claim is granted with leave to amend.

### 3.     Insider trading - California Corportions Code § 25402 (counts XIV and XV against Defendants Bonora, Parikh and Sinha

To state a claim under § 25402, a complaint must allege that an officer, director or controlling person had direct or indirect access to material information at a time of a purchase or sale of a security that was generally not available to the public. See Cal. Corp. Code § 25402. The insider trading counts are made against Defendants Bonora, Parikh and Sinha, who were the only Defendants to sell stock during the period. Compl. ¶¶ 104. Plaintiffs allege that these Defendants are officers or directors of Asyst (Compl. ¶¶ 24, 32, 33), that the had access to and actual knowledge of material information that was not publicly available (Compl. ¶¶ 103, 175) and that they sold stock (Compl. ¶ 104). As a result, Asyst was injured by having overstated financial results and inflated

14

stock prices. Compl. ¶¶ 6, 86.

Plaintiffs have failed to plead the California insider trading claims with sufficient particularity under Rule 9, as they sound in fraud. See Verisign, 531 F. Supp. 2d at 1121 ("In addition, any amended complaint should plead the § 25402 claim with particularity, as insider trading under California law is a fraudulent practice.") (citing Bowden v. Robinson, 67 Cal.App.3d 705, 711 (1977)). Plaintiffs here have not alleged which adverse facts each of the selling defendants knew, when each knew those facts, how they acquired the knowledge or when they made the sales. Compl. ¶ 104; see Verisign, 531 F. Supp. 2d at 1221. Accordingly, Defendants' Motion to Dismiss the state law insider trading is granted with leave to amend.

### 4. Unjust enrichment (count XII against all Defendants)

A claim of unjust enrichment has two elements: receipt of a benefit and unjust retention of the benefit at the expense of another. See Lectrodryer v. SeoulBank, 77 Cal.App.4th 732, 726 (2000); Melchoir v. Newline Prods. Inc., 106 Cal.App.4th 779, 793 (2003) (unjust enrichment is synonymous with restitution). Plaintiffs allege the unjust enrichment claim against all Defendants. They allege that the senior officers (Parikh, Bonora, Waechter, Schwartz, Debenham and Nikl) were unjustly enriched through their salaries and bonuses based on false financial results. Compl. ¶¶ 99-100. They allege that the Selling Defendants (Bonora, Parikh and Sinha) were unjustly enriched by retaining profits from their stock sales. Compl. ¶¶ 165-168.

Defendants, however, have cited no authority in which a court has held plaintiffs to a heightened pleading standard under Rule 9 for a claim of unjust enrichment. Plaintiffs have adequately alleged unjust enrichment under Rule 8. Accordingly, Defendants' Motion to Dismiss this claim is denied.

### 5. Breach of Contract (counts XVI and XIII against all Defendants)

Plaintiffs allege that by backdating options, Defendants have breached their employment agreements with Asyst (Compl. ¶ 183), and that by seeking shareholder approval of Plans under which stock options are granted, Defendants entered into a contract with shareholders that they then breached by backdating. Compl. ¶¶ 184-186. Plaintiffs also allege that all of the stock option contract grants should be rescinded. Compl. ¶¶ 170-171. Plaintiffs have adequately alleged breach

15

of contract for purposes of Rule 8. Accordingly, Defendants' Motion to Dismiss this claim is denied.

### 6. Accounting (count IV against all Defendants)

A claim for an accounting can be brought against a defendant who has breached his or her fiduciary duty. See Glue-Fold Inc. v. Slautterback Corp., 82 Cal.App.4th 1018, 1023 n. 3 (2000). But that claim will not lie "where it appears from the complaint that none is necessary or that there is an adequate remedy at law." Civic Wilderness Act. Corp. v. Zila Indus., 66 Cal.App.3d 1, 14 (1977).

Plaintiffs' argument that no adequate remedy at law exists because Defendants hold the keys to all of the documentation necessary to conduct an accounting is not persuasive. Plaintiffs brought this action for money damages, and "a legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into [a defendant's] business records." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478-79 (1962) ("Plaintiff must be able to show that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them."). Accordingly, Defendants' Motion to Dismiss Plaintiffs' Accounting claim is granted without leave to amend.

**Conclusion**

Nominal Defendant's Motion to Dismiss is granted with leave to amend. Individual Defendants' Motion to Dismiss is granted in part with leave to amend and denied in part. Any amended complaint shall be filed no later than May 29, 2008. Defendants informed the Court at the April 29, 2008 hearing that they intended to challenge any amended complaint through a second motion to dismiss. Accordingly, any motion to dismiss shall heard on August 12, 2008 at 9:00 a.m. The parties shall propose a briefing schedule for the motion to dismiss that gives the Court at least three weeks between the reply brief and the hearing date.

**IT IS SO ORDERED.**

Dated: May 23, 2008

ELIZABETH D. LAPORTE
United States Magistrate Judge

16