United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ASYST TECHNOLOGIES, INC. DERIVATIVE LITIGATION <br> ──────────────────────────── <br> This Document Relates to: <br> ALL ACTIONS <br> ──────────────────────────── / | No. C-06-04669 EDL <br><br> **ORDER GRANTING IN PART NOMINAL DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART INDIVIDUAL DEFENDANTS' MOTION TO DISMISS** |

In this shareholder derivative action, Plaintiffs allege that Defendants, officers and directors of Asyst, violated federal securities laws as well as state laws from 1995 through 2006 when they backdated stock options and made false filings with the Securities and Exchange Commission to cover up their conduct.  On May 23, 2008, the Court granted with leave to amend Nominal Defendant's Motion to Dismiss, and granted in part with leave to amend and denied in part Individual Defendants' Motion to Dismiss.

On July 3, 2008, Plaintiffs filed an amended consolidated complaint.  Now before the Court are Motions to Dismiss Plaintiffs' Amended Consolidated Complaint filed by Nominal Defendant Asyst and the Individual Defendants on July 17, 2008.  These matters were fully briefed and the Court held a hearing on September 9, 2008.  The parties submitted further briefing pursuant to the Court's Order on September 19, 2008.  The parties submitted additional information regarding Plaintiff Allison on October 3, 2008 and October 9, 2008.  For the reasons stated at the hearing and in this Order, Nominal Defendant's Motion to Dismiss is granted in part with leave to amend and

denied in part and Individual Defendants' Motion to Dismiss is granted without leave to amend and denied in part.

**Nominal Defendant's Motion to Dismiss**

Derivative actions are subject to specific pleading requirements:

> (b) Pleading Requirements. The complaint must be verified and must:
>
> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
>
> (3) state with particularity:
>
> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b). Asyst argues that Plaintiffs lack standing because they failed to adequately plead continuous ownership and demand futility.

**Continuous ownership**

"[A] derivative plaintiff has no standing to challenge option transactions that occurred prior to the time that plaintiff owned company stock." In re Verisign Derivative Litigation, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007) (citing In re Computer Sciences Corp. Derivative Litigation, 244 F.R.D. 580, 591 (C.D. Cal. 2007)). Here, the complaint contains the following allegations regarding Plaintiffs' stock ownership:

> Plaintiff James G. Bussing is a shareholder of Asyst, and holds and has continually held 2,000 shares of Asyst stock since November 19, 2003.
>
> Plaintiff Andrew Allison is a shareholder of Asyst, and holds and has continually held 3,000 shares of Asyst stock since at least 2001.
>
> Plaintiff Thomas Flood is a shareholder of Asyst, and holds and has continually held 100 shares of Asyst since March 8, 2006.

2

Am. Consolid. Compl. ¶¶ 23-25.[1]

The complaint challenges four stock option grants: August 8, 1995, June 16, 2000, October 2, 2001 and April 11, 2002. The amended allegations regarding Plaintiffs' stock ownership are insufficient to confer standing with respect to any of the grants. See Verisign, 531 F. Supp. 2d at 1202 (plaintiffs failed to adequately allege standing by continuous stock ownership where the complaint alleged only that the plaintiffs "have owned Verisign stock during the relevant period . . . and continue to own the Company's common stock," and stating that the plaintiffs must "unambiguously indicate in any amended complaint the dates they purchased Verisign stock, and whether they have continuously owned Verisign stock from the time of purchase up to the present."); see also In re Maxim Integrated Products Inc. Derivative Litigation, 2007 WL 2745805, *3-4 (N.D. Cal. July 25, 2007) (plaintiffs' allegation that they owned stock "at all relevant times" was insufficient to allege standing under FRCP 23.1; amended complaint must indicate "when Plaintiffs bought stock in Maxim, and must state that they have owned stock continuously since the date of the filing of the lawsuit.); In re Sagent Technology Inc. Derivative Litigation, 278 F. Supp. 2d 1079, 1096 (N.D. Cal 2003) (amended complaint must indicate when plaintiffs bought stock and must state that they have continuously owned stock since the date of the filing of the lawsuit.).

At the hearing, Plaintiffs argued for the first time that California Corporations Code section 800 and/or paragraph 9 of the Amended Consolidated Complaint confer standing for Plaintiffs Bussing and Allison. The Court permitted further briefing on these issues, which the Court has carefully reviewed. In general, Section 800 is a state analogue to Federal Rule of Civil Procedure 23.1, requiring allegations of continuous stock ownership and demand futility in shareholder derivative actions. See Grosset v. Wenaas, 42 Cal.4th 1100 (2008). Plaintiffs appear to have retreated from their position taken at the hearing regarding Section 800 by acknowledging in their

---

[1] The Court is troubled by what appears to be Plaintiffs' failure to adequately investigate the stock ownership of the two original Plaintiffs, Bussing and Flood. In the original Bussing complaint filed in 2006, Plaintiffs stated that Bussing owned stock since 2000. See Bussing Complaint ¶ 12. The original Flood complaint contains the same allegation of ownership since 2000. See Flood Complaint ¶ 12. The prior amended consolidated complaint did not repeat these assertions, instead excluding ownership dates altogether. See First Am. Consolid. Compl. ¶ 20. Only after the Court granted Plaintiffs leave to amend to allege standing did they determine stock ownership dates for Bussing and Flood, which are years after the dates alleged in the original complaints.

3

brief that the statute requires a hearing at which a court would consider evidence. See Pl.'s Supp. Brief at n. 2 (stating that if, in the future, Plaintiffs believe that Section 800 is necessary to pursue full relief, they will seek leave to file an appropriate motion and schedule a hearing).

Further, notably absent from Plaintiffs' brief regarding Section 800 is any federal authority applying that section. Accordingly, the Court declines to rule on whether Section 800 applies in this case, and will take that question up directly if and when Plaintiffs file an appropriate motion.

Arguing that this case is similar to a "bucket and best price" methodology that has been found to be "a nicer way of saying intentional backdating," Plaintiffs point for the first time to the allegations in paragraph 9 as sufficient to show intentional backdating for the period from 2002 through 2004 such that Plaintiffs Allison and Bussing having standing. See Middlesex Retirement Sys. v. Quest Software, 2008 U.S. Dist. LEXIS 68419, *14 (C.D. Cal. July 10, 2008). Paragraph 9 of the Amended Consolidated Complaint alleges in relevant part:

> 9. Subsequently, on October 9, 2006, defendants released partial details of their extensive malfeasance. While careful to disclaim any wrongdoing by current officers and directors, defendants admitted inaccuracies in stock options granted by the Company over a nine-year period between January 1995 and February 2004. Notably, on October 13, 2006, defendants admitted that:
> * * *
> (ii) defendants backdated options grants to rank and file employees, stating that "during the period from April 2002 through February 2004, **the Company set the grant date and exercise price of rank and file employee option grants for new hires and promotions at the lowest price of the first five business days of the month following the month of their hire or promotion**";
> * * *

See Am. Consolid. Compl. ¶ 9 (emphasis added). Plaintiffs' reliance on Middlesex Retirement, however, is misplaced. In that case, unlike here, the stock options granted pursuant to that "bucket and best price" method were issued to all grantees, from high level executives to rank and file employees. Moreover, in Middlesex Retirement, the lowest price was calculated at the end of each month or quarter, rather than in a five-day window as in this case. However, even if Middlesex Retirement would support Plaintiffs' argument, the allegations in the Amended Consolidated Complaint come too late in this case that has been pending for over two years and that has already been through one motion to dismiss. Therefore, the Court will not permit Plaintiffs to amend the complaint with allegations concerning the rank and file option grants to confer standing for Plaintiffs Bussing and Allison.

4

On October 9, 2008, however, in response to Defendants' October 3, 2008 letter questioning Plaintiff Allison's standing based on his E*Trade records, Plaintiffs submitted additional information regarding Mr. Allison's stock ownership obtained in part through a subpoena to E*Trade for Mr. Allison's account information. Documents from E*Trade and additional representations from Plaintiffs' counsel indicate that Mr. Allison owned Asyst stock from June 1, 2001 to the present. While the present allegations regarding Mr. Allison's stock ownership are insufficient to satisfy Rule 23.1, it appears that Plaintiffs may be able to remedy this pleading defect with this newly obtained information.

Defendants argue that even if the allegations are sufficient to meet the continuous ownership requirement, Plaintiffs did not properly add Mr. Allison as a plaintiff because leave to amend following Defendants' earlier motion to dismiss was for a limited purpose and not to add new Plaintiffs. See Aikins v. St. Helena Hosp., 1994 WL 794759, at *2 (N.D. Cal. Apr. 4, 1994) (dismissing plaintiff added through amendment: "By the Court's order of February 2, 1994, plaintiffs were given leave to amend their complaint to supplement their allegations with respect to their standing to seek injunctive relief. Plaintiffs did not request leave to name a new plaintiff, and the Court's order cannot reasonably be construed as having granted plaintiffs such leave. The joinder of Mr. Caloroso directly contravened Rule 15(a)."). Defendants argue that they have been prejudiced by Plaintiffs' maintenance of this litigation for more than two years without confirming the basic standing requirements and by having to litigate this case with "placeholder" Plaintiffs who lacked standing. While the Court is troubled that Plaintiffs pursued this matter for a considerable time with Plaintiffs who lack standing, Defendants do not show any specific prejudice, and any prejudice does not outweigh the liberal amendment rules under which leave to amend is freely granted pursuant to Federal Rule of Civil Procedure 15. Moreover, Mr. Allison was already a plaintiff in a case that was filed after the hearing on the first motion to dismiss but before the Court's May 23, 2008 Order on that motion, which has been consolidated with the Bussing and Flood matters. Accordingly, although the better course would have been for Plaintiffs to seek to add Mr. Allison through Rule 15, the Court declines to strike Mr. Allison on this basis because it would give leave to amend to add him.

5

Accordingly, Nominal Defendant's Motion to Dismiss is granted in part with leave to amend with respect to stock ownership for Plaintiff Allison only. The Motion to Dismiss is granted without leave to amend with respect to Plaintiffs Bussing and Flood.

**Demand futility**

Plaintiffs concede that they did not make a demand on the directors, and allege that such a demand would be futile. See Compl. ¶ 139(a)-(h). The purpose of the demand requirement is to "further the fundamental principle that those best suited to make decisions for a corporation - including the decision to file suit on its behalf - are its directors, not its stockholders or the courts." Finley v. Superior Court, 80 Cal.App.4th 1152, 1163 (2000).

Asyst is a California corporation, so California state law establishes the circumstances under which demand would be futile. See In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970-989-90 (9th Cir. 1999). Under California law, which is often guided by cases from Delaware, the question is whether Plaintiffs have alleged facts demonstrating a reasonable doubt that: (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Oakland Raiders v. Nat'l Football League, 93 Cal.App.4th 572, 587 (2001) (citing Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984) (holding that if a derivative suit challenges a decision made by a board of directors, then plaintiffs are excused from making a demand if "under the particularized facts alleged, a reasonable doubt is created that (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."); see also In re CNET Networks, Inc. Shareholder Litigation, 483 F. Supp. 2d 947, 954 (N.D. Cal. 2007) ("Most of plaintiffs' allegations, however, refer to the board's actions, such as ratifying option grants, preparing and signing proxy statements and financial statements, and financially benefitting from backdated options. Accordingly, the Aronson test for demand futility applies."). To show that demand would have been futile, the plaintiff must show that a majority of directors were not independent or disinterested. Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1046 (Del. 2004).

The application of the demand futility test is based on the composition of the board at the time the lawsuit is initiated, as that is the board on which the demand would have been made. See

6

Verisign, 531 F. Supp. 2d at 1189 (citing Harris v. Carter, 582 A.2d 222, 228 (Del. Ch. 1990)). When the present action was commenced, Asyst's Board consisted of seven members: Stephen Schwartz, Stanley Grubel, Tsuyoshi Kawanishi, Robert McNamara, Anthony Santelli, William Simon and Walter Wilson. Compl. ¶ 136. The allegedly illegal backdating occurred on four dates between August 1995 and April 2002. Although several directors were not Board members at all during that time (see Compl. ¶¶ 27; 340, and others were only directors for part of the time (see Compl. ¶¶ 30, 32, 33), a majority of directors on the Board when the complaint was filed were on the Board during at least part of the time when the alleged illegal activity took place.

To show interestedness, Plaintiffs must plead facts demonstrating that a director is "personally interested in the outcome of the litigation, [such] that the director will personally benefit or suffer as a result of the lawsuit in a manner that differs from shareholders generally." In re Tyson Foods Inc Consolidated Shareholder Litigation, 919 A.2d 563, 581 (Del. Ch. 2007). Put another way,

> At the pleading stage, Board independence and compliance with the business judgment rule are presumed. [citation omitted]. Demand will be excused only if the plaintiff's allegations show the defendants' actions "were so egregious that a substantial likelihood of director liability exists." [citation omitted]. "[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." [citation omitted].

Silicon Graphics, 183 F.3d at 990. "A plaintiff can overcome the presumption of director disinterestedness only with particularized facts indicating that the director's actions were 'so egregious that a substantial likelihood of directorial liability exists.'" Verisign, 531 F. Supp. 2d at 1192 (citing Silicon Graphics, 183 F.3d at 990) (quoting Aronson, 472 A.2d at 805)). However, "[b]ackdating options qualifies as one of those 'rare cases [in which] a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'" Ryan v. Gifford, 918 A.2d 341, 355-56 (2007) (quoting Aronson, 473 A.2d at 815); see also Zoran, 511 F. Supp. 2d at 1003 ("[I]f plaintiffs can plead with particularity that the directors received backdated grants, those directors will be considered interested."); In re CNET Networks, 483 F. Supp. 2d at 956, 958, 964 (stating that at the pleading stage the question is whether the plaintiff has alleged circumstances from which it may be

7

reasonably inferred that backdating as opposed to an innocent bookkeeping error occurred).

Here, with respect to demand futility, Plaintiffs allege that Directors Grubel, McNamara, Kawanishi and Wilson received one of the four allegedly backdated stock option grants. See Compl. ¶ 74. Plaintiffs also allege that Directors Grubel and Santelli served on Asyst's Compensation Committee at least at some point during the time that stock options were allegedly backdated. See Compl. ¶¶ 30; 33. They also allege that Directors Grubel, McNamara, Simon and Wilson served on the Audit Committee at least at some point during the relevant time. See Compl. ¶¶ 30; 32; 34; 35. Plaintiffs also allege that all current directors are interested because they signed off on allegedly false and misleading financial statements. See Compl. ¶ 139(g), (h). For the reasons set forth below, the Court concludes that Plaintiffs have adequately alleged that demand would be futile based on the receipt by four of seven directors of the June 2000 grant. Therefore, the Court does not consider the other grounds for futility raised by Plaintiffs.

### June 16, 2000 stock option grant

"If a director received backdated stock options, he or she would be receiving a benefit not shared by the shareholders," and if Plaintiffs can plead with particularity that the directors received backdated stock, then those directors will be considered interested. In re CNET Network, 483 F. Supp. 2d at 958; see also Zoran, 511 F. Supp. 2d at 1003 ("[I]f plaintiffs can plead with particularity that the directors received backdated grants, those directors will be considered interested."). However, mere allegations that a director received backdated options without particularized allegations showing backdating or knowledge of backdating is insufficient to disqualify a director for demand futility purposes. In re CNET Networks, 483 F. Supp. 2d at 956, 958, 964 (stating that at the pleading stage the question is whether the plaintiff has alleged circumstances from which it may be reasonably inferred that backdating as opposed to an innocent bookkeeping error occurred).

Plaintiffs allege that the June 16, 2000 grant was made under the 1993 Directors' Plan, which provides that the exercise price of the options shall equal the closing price of Asyst common stock on the date of the grant. See Compl. ¶ 74. Plaintiffs allege that the grant was discretionary because the 2000 proxy statement notes: "commencing with the fiscal year ending March 31, 2001, the company will annually grant each non-employee director an option to purchase 7,500 shares of

1  common stock on April 1 of each year, except that for the fiscal year ending March 31, 2001, the
2  options were granted on June 16, 2000." Id.  Plaintiffs allege that the exercise price of the grant was
3  $28.00, which matched the closing stock price on that date, which was the lowest closing price for
4  the month of June 2000 and the entire fiscal quarter.  See id. ¶ 75.  The price of the stock twenty
5  trading days after the grant was $37.06, for a twenty-day cumulative return based on the exercise
6  price of 32.4%.  See id.  On an annualized basis, Plaintiffs allege that directors Grubel, Kawanishi,
7  McNamara and Wilson received a 388.4% return compared to shareholders who received a -75.98%
8  return.  See id.  They also allege that Asyst made internal findings that stock options were
9  improperly issued.  See id. ¶ 72.  They further allege that the May 25, 2006 report from Merrill
10 Lynch shows that Asyst ranks at the top of the list of companies with excess options pricing return.
11 See id. ¶¶ 67, 68.
12       The allegation of the discretionary nature of this grant is an important aspect of backdating.
13 See In re CNET Networks, 483 F. Supp. 2d at 959 (finding that the plaintiffs had not made a
14 sufficient showing of backdating where the defendant provided evidence that stock options were
15 granted on a certain day to correspond with the grantee's commencement of employment); In re
16 Zoran Corporation Derivative Litigation, 511 F. Supp. 2d 986, 1005 (N.D. Cal. 2007) ("Coupled
17 with the statistical pattern of favorable grant dates and the fact that the grant date could be chosen at
18 the will of the compensation committee, plaintiff has plainly succeeded in pleading that these grants
19 were backdated.").  Even if, as Defendants argue, this was the last discretionary grant, Defendants
20 cite no authority that switching to non-discretionary grants after a suspicious discretionary grant
21 retroactively negates the suspicious nature of the earlier grant.  Moreover, Plaintiffs have included in
22 their complaint a graph showing that the exercise price was at the low point of a two-month period.
23 See Compl. ¶ 75.
24       Defendants respond that in backdating cases, courts look at a pattern of multiple grants to
25 determine whether the timing was suspicious, and that here Plaintiffs alleged backdating in only four
26 out of fifty-five grants over a ten-year period, which does not constitute an actionable pattern.  See
27 also Edmonds v. Getty, 524 F. Supp. 2d 1267, 1272-74 (W.D. Wash. 2007) (alleging that 21 out of
28 25 discretionary grant dates from a three-year period were backdated); In re Affymetrix Derivative

9

1  Litig., 06-5353 JW (attached to Goodman Decl. Ex. 2) (N.D. Cal. Mar, 31, 2008) (alleging that
2  100% of discretionary grants made for a four-year period were backdated); In re Linear Tech. Corp.
3  Derivative Litigation, 2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) (allegations that in seven
4  instances over seven years, stock options were dated just after a sharp drop and before a substantial
5  rise in price was not enough to show a pattern of backdating particularly where there were no
6  allegations that how often and at what times options were normally granted); In re Openwave Sys.,
7  503 F. Supp. 2d at 1350 (finding that "in a set of 40 options, one would expect 10 to fall on 'one of
8  the lowest' monthly dates" and that "is as consistent with a random selection of stock option dates,
9  as with a pattern of backdating).  Here, while the question is a close one because Plaintiffs'
10 allegations are not as strong as in some of the cases on which they rely, the Court concludes that
11 Plaintiffs have sufficiently pled an actionable pattern.
12        The allegations regarding disproportionate return are important to the backdating analysis.
13 Defendants, however, argue that the allegations "ignore[] economic reality" because the directors
14 received no return from the grants and therefore have not benefitted financially at the expense of
15 shareholders.  Specifically, Defendants state that none of the directors have exercised and sold any
16 of the shares granted on June 16, 2000.  See Howald Decl. ¶ 9.  Defendants state that the June 16,
17 2000 option is under water because the stock price has declined, and that consequently, on the date
18 the complaint was filed, the value of the stock option to the directors was -$160,050.  See Howald
19 Decl. ¶ 7.  Plaintiffs, however, argue that the fact that the option was under water at the time of the
20 complaint is irrelevant.  See In re CNET Networks, 483 F. Supp. 2d at 960 ("The law, however, may
21 punish even the unsuccessful fraudster, or at least the incident could be used to establish an overall
22 pattern."). Defendants respond that directors who receive allegedly backdated options have a strong
23 financial incentive not to authorize any corrective action that would devalue their holdings or
24 obligate them to disgorge improperly obtained profits, and because there is no threat of devaluing an
25 option here that has no value and there is no threat of disgorging profits, none of the directors are
26 interested.  This argument, however, cuts both ways.  Directors who receive allegedly backdated
27 options also have a strong incentive not to authorize legal action against the company even if the
28 shares are under water because a spotlight on the company's alleged illegal activity could further

devalue their holdings.

On balance, Plaintiffs have sufficiently alleged interestedness by Directors Grubel, McNamara, Kawanishi and Wilson, who received the June 16, 2000 option grant. See Zoran, 511 F. Supp. 2d at 1008 ("In sum, plaintiff has pled that six of eight board members at the time of the complaint received backdated stock options during the time that plaintiff held stock. This is sufficient to show that the board could not have responded in a disinterested manner to a demand, and thus that demand was excused. This is dispositive of the demand issue.") (internal citation omitted). Because the amended consolidated complaint adequately alleges that four of seven directors were interested by virtue of their receipt of at least one allegedly backdated option grant, the Court need not address the other grounds for interestedness raised by Plaintiffs. Accordingly, Nominal Defendant's Motion to Dismiss is denied on this ground.

**Individual Defendants' Motion to Dismiss**

The individual Defendants move to dismiss Plaintiffs' complaint on the grounds that many of the claims are time-barred and that complaint fails to state a claim for violation of Section 10(b) of the 1034 Exchange Act pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

**Timeliness**

Defendants argue that Plaintiffs' addition of Plaintiff Allison and of the claim for violation of Section 29(b) of the Exchange Act are time-barred. Here, Court has already determined that federal claims preceding August 1, 2001 and state law claims prior to August 1, 2003 are time-barred. See Order at 7, 9. "An amendment adding a party plaintiff relates back to the date of the original

pleading only when: 1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff." In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir. 1996). First, Mr. Allison's claims are identical to those raised by Mr. Bussing and Mr. Flood, so there can be no dispute that Defendants had adequate notice of Mr. Allison's claims. Further, Plaintiffs argue that Section 29(b) claim arises out of the same facts that form the basis for all claims, that is, the alleged fraudulent backdating. Second, relation back would not unfairly prejudice Defendants. Although the Court is troubled that this case has been litigated for two years with incorrect stock ownership dates for Plaintiffs, to date only the motions to dismiss have been filed and this case remains in the relatively early stages of litigation. Third, there can be no dispute that Mr. Allison's interests are aligned with the other Plaintiffs. Thus, the addition of Mr. Allison and the Section 29(b) claim relate back to the date of the initial complaint and therefore are not time-barred under Rule 15(c).

Defendants argue that the relation back doctrine does not apply here because this case is consolidated. See Morin v. Trupin, 778 F. Supp. 711, 733-34 (S.D. N.Y. 1991) ("The purpose of Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.' The consolidation rule, Fed.R.Civ.P. 42, on the other hand, has as its end 'to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties.' Thus, while Rule 15 may be said to have "substantive" objectives, consolidation is a trial management device for which the policies of Rule 15 have no relevance."); see also Bamburg v. SG Cowen, 236 F. Supp. 2d 79, 87 (D. Mass. 2002) ("However, a consolidation of pending cases for case management purposes is not tantamount to an amendment of a single pending case under Fed.R.Civ.P. 15(c)."). While this point may well be technically correct, leave to amend is freely granted, and the Court would have granted leave to add a new party. While Plaintiff should have followed the proper procedure, it would elevate form over substance to make Plaintiffs seek leave now to refile the identical complaint.

Defendants argue in a footnote that even if the Section 29(b) claim is timely, Plaintiffs have

12

failed to state a claim under that Section. See 15 U.S.C. § 78cc(b). Plaintiffs allege that the "option contracts [received by the defendants] should be rescinded under § 29 because those defendants violated § 10(b) and SEC Rule 10(b)-5 in the performance of administering Asyst's stock option plans." Compl. ¶ 154. Defendants argue that Plaintiffs must allege "which contracts should be rescinded, the contents of the contracts, or why any contracts should be rescinded given that plaintiffs fail to allege facts sufficient to demonstrate that the performance of these option contracts violated Section 10(b)." Defs.' Mot. at n. 3. There is authority, however, that this level of detail is not required to survive a motion to dismiss. See Berckeley Inv. Group Ltd v. Colkitt, 455 F.3d 195, 205 (3d Cir. 2006) ("Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions. . . . In order to void the Agreement under Section 29(b), [an individual] must establish that: (1) the contract involved a prohibited transaction; (2) he is in contractual privity with [the entity]; and (3) [the individual] is in the class of persons that the securities acts were designed to protect."). Plaintiffs allege that Asyst is in privity with the defendants with respect to stock options granted to Defendants, that Defendants have engaged in prohibited conduct and that Asyst is a party deserving protection under the securities laws. Compl. ¶ 155. This is sufficient to state a claim for Section 29(b).

**Failure to state a claim under Section 10(b)**

Defendants argue that Plaintiffs failed to state a derivative claim for federal securities violations. To state a claim under Section 10(b), a plaintiff must plead facts to show: (1) a material misrepresentation, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005); 15 U.S.C. § 78j(b). Plaintiffs assert their Section 10(b) claim against Defendants Schwartz, Bonora, Grubel, Kawanishi, Santelli, Wilson, Parikh and Bell. Defendants challenge Plaintiffs' allegations of falsity and scienter. The adequacy of Plaintiff's pleading on this claim presents a close question, but on balance, the Court concludes that Plaintiffs have stated a claim for violation of Section 10(b), except with respect to Defendants Kawanishi, Wilson and Bell.

When pleading fraud, as here, a plaintiff must meet the heightened pleading standard of Rule

13

9(b), which requires allegations of particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false and misleading.  See In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 n. 7 (9th Cir. 1994).  The Private Securities Litigation Reform Act ("PSLRA") requires plaintiffs alleging violation of the Securities Act to specify each misleading statement, to explain why the statement was misleading and, if an allegation is made on information and belief, to list all facts upon which that belief is formed.  15 U.S.C. § 78u-4(b)(1).  The complaint must also state with particularity facts giving rise to a strong inference that the defendant knowingly or with deliberate recklessness made false statements or omitted a material fact.  15 U.S.C. § 78u-4(b)(2).

**Falsity**

> Because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, we have incorporated the dual pleading requirements of 15 U.S.C. §§ 78u-4(b)(1) and (b)(2) into a single inquiry.  In considering whether a private securities fraud complaint can survive dismissal under Rule 12(b)(6), we must determine *whether particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] deliberate recklessness made false or misleading statements to investors.*  Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a strong inference that misleading statements were knowingly or [with] deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6).

Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir.2001) (emphasis added).

With respect to falsity, Plaintiffs allege that Defendants concealed their backdating by producing and disseminating false financial statements and proxy statements.  Compl. ¶¶ 56, 85, 97-113.  Plaintiffs also alleged that the director Defendants have primary liability for the misstatements because they prepared false statements.  Compl. ¶¶ 137-39.  Plaintiffs have specified in detail the false and misleading statements filed by Defendants between 1995 and 2005.  Compl. ¶¶ 114-129.  The complaint also alleges the signatories of each allegedly false and misleading Form 10-K.  Compl. ¶¶ 83, 85, 99, 120.  They have also alleged the material nature of the statements.  Compl. ¶¶ 116, 118, 121; see also, e.g., Zoran, 511 F. Supp. 2d ar 1011 (stating that it is material to investors "that the board was feathering the nests of insiders via backdated options.").  Plaintiffs have also alleged that Asyst's investigation found some options that were not priced correctly.  See Am. Consolid. Compl. ¶ 9.  Moreover, as stated above, Plaintiffs have adequately alleged backdating.

14

Further, Defendants have cited no authority for requiring the detailed allegations that Defendants argue are necessary, such as what the true option grant dates were and whether the delta between the stated grant date and the alleged grant date was material. Defendants note, for example, that while the April 11, 2002 price of $14.91 might have been a low price of the month, it was not the low price for the quarter or the fiscal year. See Mot. at 11. Defendants argue, without citing any supporting authority, that Plaintiffs must show why Plaintiffs are comparing that grant to a monthly figure and others to a quarterly or yearly figure. See In re CNET, 483 F. Supp. 2d at 961 ("The exercise price was the third lowest price for that month. Defendants argue that if this grant was part of some massive scheme to enrich the grantees, why not go for the lowest price they could find? This argument is like giving a bank robber credit for leaving some cash in the vault. Perhaps they did not want to make it too obvious by being too greedy. The simple fact that there were days close in time where the stock closed at an even lower price is not sufficient to defeat the facts pleaded by plaintiffs. Plaintiffs have successfully pleaded that this grant may have been backdated. This grant was not made pursuant to some overall plan, and the numbers surrounding it give rise to an inference that the date was changed.") (internal citation omitted). However, Plaintiffs have alleged that the grants were made at a monthly, quarterly or yearly low price, and they have provided the statistical analysis showing the disparity between the management returns and shareholder returns. Cf. Ryan, 918 A.2d at 355, n. 34 ("True, the Merrill Lynch report does not state conclusively that Gifford's options were actually backdated. Rather, it emphatically suggests that either defendant directors knowingly manipulated the dates on which options were granted, or their timing was extraordinarily lucky. Given the choice between improbable good fortune and knowing manipulation of option grants, the Court may reasonably infer the latter, even when applying the heightened pleading standards of Rule 23.1."). While this is a close question, the allegations are sufficient to show falsity.

**Scienter**

The PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Ninth Circuit has stated that the allegations of scienter must at a minimum show deliberate

15

recklessness: "we read the PSLRA language that the particular facts must give rise to a 'strong inference ... [of] the required state of mind' to mean that the evidence must create a strong inference of, at a minimum, 'deliberate recklessness.'" Silicon Graphics, 183 F.3d at 977.  In Tellabs, Inc. V. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2502 (2007), the Supreme Court defined "strong inference:" "To qualify as 'strong' within the intendment of § 21D(b)(2), an inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 127 S. Ct. at 2504-05.  This is because "[a]n inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct." Id.  The Court also stated: "The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 2509.  "In the options backdating context, allegations that a defendant holds a high executive position, without more, do not support a strong inference of scienter. On the other hand, allegations that the defendant signed false financial documents, approved options grants, oversaw the options granting process, or was intimately involved in deciding when and to whom options would be granted may support a strong inference of scienter." In re Juniper Networks Inc. Sec. Litig., 542 F. Supp. 2d 1037, 1047 (N.D. Cal. 2008) (internal citations omitted); see also Middlesex Retirement System v. Quest Software, Inc., 527 F. Supp. 2d 1164, 1182 (C.D. Cal. 2007) (rejecting the defendant's arguments in opposition, concluding that: "Given the extremely beneficial option grant dates, the Individual Defendants' respective executive positions in the Company, and the substantial number of shares awarded to the various Defendants during and before the Class Period, the Court finds that Plaintiff has sufficiently pled a "strong inference" that Defendants knew or were deliberately reckless in not knowing that the purported option grant dates were improper."); Verisign, 531 F. Supp. 2d at 1207 (finding that conclusory allegations about committee membership are insufficient to make strong inference of scienter).

With respect to scienter, Plaintiffs allege that Defendants Parikh, Bonora and Schwartz received backdated stock options during the limitations period. See Compl. ¶¶ 12, 73, 76-77, 83, 84. They also allege that Defendants Springgate, Sinha, Grubel and Santelli, as former or current

16

members of the Compensation Committee, issued backdated stock option grants. See Compl. ¶¶ 27-40, 73-77, 83-84, 94. Plaintiffs also allege that Defendants Bell, Grubel, Simon, McNamara, Wilson and Springgate were specifically charged with overseeing the accounting and financial processes at Asyst as former or current members of the Audit Committee. See Compl. ¶ 50. Plaintiffs further allege that Defendants Schwartz, Grubel, Kawanishi, McNamara, Santelli, Simon, Wilson, Parikh, Bonora and Nikl gained knowledge of the backdating because they were involved in the options-granting process and/or the financial and tax reporting process. See Compl. ¶¶ 12, 27-40, 73, 83-84. They specifically allege that Defendants Parikh, Wilson, Springgate, Grubel, Kawanishi, Sinha, McNamara, Santelli, Bell, Simon and Nikl actually signed Asyst's Form 10-Ks, and they specify the years that each Defendant signed. See Compl. ¶¶ 27-39, 99, 105, 107, 109, 112-121. The complaint also alleges that all Defendants reviewed and approved proxy statements that included false representations that stock options were granted at fair market value to Asyst's top executives. See Compl. ¶¶ 98, 100-101, 103-04, 106, 109. The complaint also alleges that the backdating violated Asyst's stock option plans that were in place. See Compl. ¶¶ 54-58, 72, 78, 81, 113. Therefore, Plaintiffs allege, the grants were not recorded as required under Generally Accepted Accounting Principles, and caused Asyst to materially overstate its net income or materially understate their net loss. See Compl. ¶¶ 114-121. Plaintiffs also allege that Defendant Schwartz signed Sarbanes-Oxley Act certifications during the relevant period that essentially certify that he had made internal controls and procedures to ensure that material information was made known to him, that he had personally evaluated the effectiveness of the controls and that any deficiencies in the controls were disclosed in the SEC filings. See 15 U.S.C. § 7241; Compl. ¶¶ 123-29. Finally, Plaintiffs allege that Asyst was forced to restate its historical financial results which were impacted by approximately $19 million. See Compl. ¶¶ 11, 118, 126.

An examination of the allegations as a whole, as required by Tellabs, demonstrates a sufficient inference of scienter with respect to Defendants Schwartz, Bonora, Grubel, Santelli and Parikh. Each of these Defendants are alleged to have participated in several different activities evidencing scienter. See, e.g., Juniper Networks, 542 F. Supp. 2d at 1047 (allegations regarding high executive positions of CEO and CFO, coupled with allegations that they received and sold

17

backdated options, signed false financial documents, knew or were reckless in not knowing that documents were false, placed themselves in positions of oversight of the option-granting process, were enough to show scienter for motion to dismiss); Middlesex Retirement Sys., 527 F. Supp. 2d at 1183 ("Collectively, Defendants were the recipients of literally millions of option grants between 1998 and 2002. This fact, standing in isolation, is insufficient to establish "deliberate recklessness." However, Plaintiff's FAC specifies the precise number of options received by Defendants on the respective improper grant dates. Indeed, it is simply incomprehensible that for such large option grants Defendants would not have been keenly aware of the option measurement date and the resulting value of the option grants. Given that Defendants' respective positions on the Compensation Committee, Audit Committee, as CFOs, etc., would have given Defendants detailed knowledge of when the options were actually granted, and given that the Court has already found (in no small part because of the press release issued by Quest itself) that extensive backdating occurred, Plaintiff's FAC has adequately pled that Defendants would have known or were deliberately reckless in not knowing about the backdated options."); see also In re Maxim Integrated Prods., Inc. Derivative Litig., C-06-3344 JW (Aug. 27, 2008) (Ex. A to Notice of Supplemental Authorities) (finding that plaintiffs' allegations against the CEO of: (1) his position at the company; (2) that he participated in preparing, reviewing, approving and signing false financial reports and proxy statements; and (3) the allegations that a significant number of grants (44 out of 57) were made at historical and relative low points, showed scienter for purposes of the motion to dismiss, and that scienter was properly alleged with respect to three members of the compensation committee in combination with the Company's admission that option grants were not properly dated). The showing with respect to Defendants Bell, Kawanishi and Wilson however, does not leave the Court with a strong inference of scienter. See In re Maxim, C-06-3344 JW (finding that allegations against three other directors that they approved backdated options and prepared false financial and proxy statements were too broad and non-specific to allege scienter); see also In re Affymetrix Derivative Litig., C-06-5353 JW (N.D. Cal. Oct. 24, 2008) (finding, inter alia, that the failure to allege that individual defendants received backdated options during the limitations period or served on the Compensation Committee was insufficient to plead scienter). Accordingly, Individual Defendants'

18

Motion to Dismiss is granted in part without leave to amend with respect to Defendants Bell, Kawanishi and Wilson, but is denied in all other respects.

**Conclusion**

Nominal Defendant's Motion to Dismiss is granted in part with leave to amend, granted in part without leave to amend and denied in part. Individual Defendants' Motion to Dismiss is granted in part without leave to amend and denied in part. Any amended complaint pursuant to this Order shall be filed no later than November 26, 2008.

**IT IS SO ORDERED.**

Dated: November 12, 2008

ELIZABETH D. LAPORTE
United States Magistrate Judge